### George Miller v. Anthony Holtz.

If a case, removed to the District Court, *by certiorari*, from a justice's court, be dismissed, on motion of the defendant, for a failure on the part of the plaintiff to comply with a rule requiring him to give security for costs, or for any other cause, except such as is ground for quashing the writ of *certiorari* itself, it puts a final end to the suit, and does not revive the judgment of the justice's court.   And an execution issued from the latter court, under such circumstances, will be enjoined.

If the plaintiff were not subject to the rule for costs in the District Court, the dismissal of the cause by that court, for want of a compliance, was a judgment from which he ought to have appealed.

The writ of *certiorari* removes a case from the magistrate's court, and the justice can take no further step in the cause, except upon the order of the District Court.

If, upon motion, the writ of *certiorari* be quashed, this is equivalent to a judgment, that the writ ought not to have been granted; and is, in effect, a judgment that the District Court will not review the judgment of the justice's court.

The quashing, or dismissal of the writ, revives the judgment of the justice's court, and the District Court either certifies its action in the premises to the justice's court, or awards a formal *procedendo*, commanding the justice to execute his judgment.   But it is only where the writ of *certiorari* is quashed by the District Court, for want of merits in the petition for the writ, or because there is no sufficient bond, that the judgment of the justice's court is revived.

The writ takes the case from the jurisdiction of the justice's court, and it becomes a suit in the District Court, to be tried *de novo*, just as if it had been originally instituted in the latter court, subject, of course, to such rules and limitations, as the law has prescribed for the trial of such causes.

When the cause is removed to the District Court, the plaintiff in the justice's court, is the plaintiff in the District Court, and is under the same obligation to prepare for trial, and to prosecute his cause, as every party is, who sues originally in the District Court.   If he fail to prosecute his suit, it may be dismissed upon the motion of his adversary.

Appeal from Victoria.   Tried below before the Hon. Fielding Jones.

The facts of this case are fully stated in the opinion of the court.   The principal grounds upon which the injunction was asked for in the petition, were, that the dismissal by the District

Court of the *certiorari* case, vacated and avoided the judgment originally rendered, in that case, by the justice of the peace, " and put the said parties out of both courts;" entitled the petitioner to an execution against Holtz for all costs in the said suit, in both courts; and that the execution against the petitioner was therefore illegal.

The motion of the defendant, (the appellee,) to dissolve the injunction and to dismiss the petition, was virtually a demurrer to the petition. This motion was sustained.

*J. N. Mitchell*, for the appellant.

*A. H. Phillips* and *H. C. Pleasants*, for the appellee.

BELL, J.—The appellee, Anthony Holtz, sued the appellant in the court of a justice of the peace, and obtained a judgment. Miller, the present appellant, obtained a writ of *certiorari*, and removed the cause to the District Court. In the District Court, Miller obtained a rule for security for costs against Holtz, and at the next term of the court after the rule was made, Holtz having failed to give the security, the cause was dismissed from the docket, upon motion of Miller. After the cause was dismissed from the District Court, the magistrate, or, to be more particular, the successor in office of the magistrate who rendered the original judgment in favor of Holtz against Miller, issued an execution against Miller for the amount of the judgment. Miller then obtained an injunction from the district judge, enjoining all proceedings by the sheriff, the magistrate and Holtz, upon the magistrate's judgment, and the execution issued by virtue of it. Holtz then made his motion in the District Court to dissolve the injunction which Miller had obtained, and the district judge dissolved the injunction. The case now before us is an appeal from the decree of the District Court, dissolving the injunction.

The writ of *certiorari* removed the case from the magistrate's court to the District Court, and the magistrate's court could

take no further step in the matter, except upon the order of the District Court. The writ of *certiorari*, to remove a cause from the court of a justice of the peace to the District Court, is not a writ of right. It depends upon the discretion of the judge to whom the application for the writ is made, whether it will be granted or not. But inasmuch as the grant of the writ is upon an application *ex parte*, the law permits the party who is affected by the grant of the writ to move, at a proper time, that the writ be quashed or dismissed. If, upon motion, the writ of *certiorari* be quashed, this is equivalent to a judgment that the writ ought never to have been granted. The petition for *certiorari*, or the writ of *certiorari*, is then stripped of its efficacy. The judgment of the District Court is, in effect, that it will not review the judgment of the justice's court. The quashal or dismissal of the writ, then revives the judgment of the justice's court, and the District Court either certifies its action in the premises to the justice's court, or awards a formal *procedendo*, commanding the justice of the peace to execute his judgment.

But it is only in the single case of the quashal of the writ of *certiorari* by the District Court, for want of merits in the petition for the writ, or because there is no sufficient bond, that the judgment of the justice's court is revived. The writ takes the case from the jurisdiction of the justice's court, and it becomes a suit in the District Court, to be tried *de novo*, just as if it had been originally instituted in the District Court, subject, of course, to such rules and limitations as the law has prescribed for the trial of such causes. When the cause is removed to the District Court, the plaintiff in the justice's court is the plaintiff in the District Court, and he is under the same obligation to prepare. for trial, and to prosecute his cause, as every party is, who sues originally in the District Court. If he fails to prosecute his suit, it may be dismissed, upon the motion of his adversary; but the dismissal of it for want of prosecution, would not revive a judgment which had been rendered in his favor in the justice's court. In such case, the dismissal does not operate upon the writ of *certiorari*. There is no judgment that the writ of *cer-*

*tiorari* was improvidently granted. The writ still retains its force, and the plaintiff's suit is dismissed, because he has failed to comply with the requirements of the law, in its diligent prosecution.

It is not necessary for us now to decide, whether or not it was error in the District Court to require the plaintiff to give security for the costs. In the case of Foreman v. Gregory, 17 Texas Rep. 193, it was held, that where a defendant in the justice's court, removes a case to the District Court by *certiorari*, the plaintiff cannot be required in the District Court to give security for the costs on the motion of the defendant. Whether it was proper in this case, for the District Court to make the rule against the plaintiff or not, the dismissal of the cause for failure on the part of the plaintiff to comply with the rule, was not such a dismissal as revived the judgment of the justice's court, or authorized the issuance of execution on that judgment. It was not a dismissal, or quashal of the writ of *certiorari*. It was a dismissal of the litigation of the suit, because an order of the court was not complied with. If the plaintiff was not subject to the rule for costs in the District Court, then the dismissal of the cause by that court, for want of a compliance with the rule, was a judgment from which the plaintiff ought to have appealed.

From these views it follows, that the justice of the peace had no authority to issue the execution against Miller; that the injunction to restrain the proceedings of the justice and sheriff upon that judgment and execution, was properly granted, and ought to have been perpetuated.

The judgment of the court below is reversed, and the cause remanded, with instructions to the court below to proceed in conformity with this opinion. ·

WHEELER, C. J., dissenting.—The act organizing justices' courts gave the right, after judgment in that court, to remove the cause into the District Court for revision, by *certiorari*, as well as by appeal; and provided that the cause might be "reviewed and tried *de novo*," (Dig. Art. 1753, Acts of 1852, ch. 70, p. 60.) It

was provided by statute, that appeals from the justice's court should be tried in the same manner, (Dig. Art. 714.) The law required the proceedings of the justice to be certified, and the papers removed into the District Court, in both cases, in the same manner. The same proceedings were prescribed, and the same judgment to be rendered in the District Court in both cases. The law required the bond in the case of a *certiorari*, to be "conditioned in the same·manner as in appeals to the District Court." (Dig. Art. 1753, p. 714, 715, 716, Act February 10th, 1852, Pamphlet Laws, p. 61, §§ 2, 3, 4.) The only difference was in the mode of removing the case into the District Court, being in the one case by *certiorari*, and in the other, by appeal.

The first case which came before the court by *certiorari*, after the case of Titus v. Latimer, 5 Texas Rep. 433, had decided the provision of the act, giving an appeal, unconstitutional, was the case of O'Brien v. Dunn, reported in the same volume. (Id. 570.) In that case Judge LIPSCOMB entered upon an elaborate review of the law upon the subject of the proceeding by *certiorari;* and held, that although the statute was unconstitutional, in so far as it gave a direct appeal to the District Court, yet in other respects it was constitutional, and in force; and the provisions regulating the trial in the District Court upon appeal, were applicable to a case removed into that court by *certiorari*. (Id. 577.) In respect to the use of the writ in other states, the judge said : "We have before observed, that although there is much uniformity in the decisions of the several state courts, as to the grounds on which the writ of *certiorari* should be issued, they are far from being uniform in practice, in the mode of trying and disposing of the case, when it has been so brought up. In Virginia, and most of the states east, the writ of *certiorari* is regarded as a writ of error; and they will not try any question of fact, but only decide the law arising from the matter complained of in the petition, and this from the return of the justice of the peace; and will reverse, affirm, or remand. In North Carolina, Tennessee, and Alabama, if there is sufficient ground for sustaining the writ, shown in the petition, on which it was

awarded, the case is tried on the merits." (5 Texas Rep. 576.) I may add, it is tried as an appeal, under statutory provisions similar to our own. The course of proceeding mentioned by the judge, as obtaining in the former states, is according to the common law; in the latter, it is changed by statute, as in this state. (Bac. Abr. tit. Certiorari; 6 Wend. Rep. 564; 3 Penn. Rep. 24; 5 Binn. 27.)

The case of O'Brien v. Dunn, is in harmony with the decisions in cases of *certiorari*, before the case of Titus v. Latimer was decided, and with repeated decisions since, in which it has uniformly been held, that the provisions of law regulating proceedings in the justice's court, and in the District Court, in cases brought there by *certiorari*, are unaffected by the decision in Titus v. Latimer; that that case had reference solely to the mode of removing the case into the District Court for revision; when removed there by *certiorari*, it occupies in all respects precisely the condition of an appeal. (5 Texas Rep. 577.) Whether it be to review a judgment of the justice's court, or the Probate Court, it is governed by the same principles and rules of procedure. (Moore v. Hardison, 10 Texas Rep. 467; 9 Id. 113; Poag v. Rowe, 16 Id. 590; Ray v. Parsons, 14 Id. 370.) The jurisdiction of the District Court to hear and determine the cause, and the proceedings and judgment, are in both cases the same. That they have been uniformly so considered and treated by the decisions of this court, no one at all conversant with the decisions, can for a moment doubt. Accordingly, in Foreman v. Gregory, 17 Texas Rep. 193, it was decided, that "where a defendant removes a case from a justice's court into the District Court by *certiorari*, the plaintiff or appellee cannot be ruled to give security for costs, on the motion of the defendant, or appellant." In delivering the opinion of the court, Chief Justice HEMPHILL said: "Although a plaintiff, under Art. 801, Hart. Dig., may be ruled to give security for costs, yet the appellee, in a case where a magistrate's judgment is brought up by *certiorari* to the District Court, is not such plaintiff, as comes within the meaning of this section of the statute. Whether he

should not be styled appellee, and the other party appellant, in the proceeding before the District Court, instead of the style by which they were known before the justice of the peace is, at least, doubtful. In regulating appeals from a justice's court to the District Court, in Arts. 716 and 717, Hart. Dig., the party who brings up the appeal, is styled the appellant. But, admitting that the cause when brought up to the District Court, is, by the usual practice, placed on the docket as it was on the docket below, and the parties named plaintiff and defendant below, are styled plaintiff and defendant above; and although the trial is *de novo*, and the plaintiff must prove his cause of action, yet the appellant, or the party who brings up the cause, is the real actor in the proceedings. He has given bond to secure the costs, as well as to perform the decree. The other party is passive. The further costs that may be expended, will not have been incurred through his agency. He was content with the judgment below, and cannot be made to secure the costs of a proceeding, prosecuted without his agency and against his consent."

This view of the question resulted naturally and necessarily from the doctrines uniformly maintained upon this subject in former decisions. I think it manifestly the sound and correct view, and the only one which can be maintained on principle. Such, heretofore, has been the unanimous opinion of this court. We now hold directly the contrary. It seems to me, that the view now taken of the office of a *certiorari*, is not in accordance with the office assigned to the writ at the common law, or by our statutes and adjudications. The necessary consequence of the decision in Foreman v. Gregory is, that the dismissal of the *certiorari* had the same effect as the dismissal of an appeal, or writ of error; it left the judgment of the justice remaining in full force, just as if no appeal or *certiorari* had been prosecuted from the judgment. So it has been heretofore considered. After dismissing the *certiorari*, the only further action which the court could take, it was said by Judge LIPSCOMB, in Ahrens v. Giesecke, was "to have awarded a *procedendo* to the justice of the peace, to proceed to have his judgment executed." (9 Texas

Rep. 435; 12 Id. 314.) If the justice proceeded without it, it would, at most, be but an irregularity, and no ground for an injunction.

It can make no difference when, or for what cause, the *certiorari* was dismissed; the effect must be the same, whatever the cause of dismissal. If the plaintiff in the *certiorari* saw proper to have it dismissed, the defendant was not required to resist it; he was not the actor in that proceeding, and had no interest to maintain it. The statute required the plaintiff in the *certiorari* to give bond and security for its prosecution in the District Court; the defendant could not be required to give the security; and if the former saw proper to procure, or suffer his *certiorari* to be dismissed from the court, because the defendant had not given security, or for any other cause, that was his own concern. It was a virtual abandonment of his appeal, or *certiorari*; and left matters just as they were before it was obtained.

If the defendant in the *certiorari* be required to give security for the costs of the proceeding in the District Court; if he, and not the plaintiff, is the party from whom the security is required; it is difficult to understand, why the legislature should have prescribed the giving of bond and security by the plaintiff, as a condition precedent to the proceeding in the District Court. To shift the burden of giving the bond and security from the plaintiff to the defendant in the *certiorari*, would be, it would seem, to supersede the provision of the statute, and render it nugatory; in effect, to repeal it, and substitute another provision in its stead, (Dig. Art. 801,) intended by the legislature to apply to suits originally brought and prosecuted in the District Court, and not to suits brought there by appeal or *certiorari* from the justice's or the Probate Court.

It can make no difference, that the trial in the District Court is *de novo*. So it is in cases brought by *certiorari*, or appeal, from the Probate Court. It is designed more certainly to attain the substantial justice of the case. Requiring the parties to occupy the same attitude upon the trial which they occupied in the inferior court, is a rule of practice adopted for convenience

merely. It does not change the character of the jurisdiction which the District Court exercises. It is not, and cannot be, the exercise of original jurisdiction; for the constitution forbids it. Nor can it make any difference that the writ of *certiorari* to the justice's court is not a matter of course, and of right. It is held, that it is so, equally with an appeal to revise the judgments of the Probate Court. But that does not affect the attitude of the case, or the rules of practice applicable to it, in the District Court. The law looks to the substance, and not to the mere form of the proceeding; and it can make no difference in the nature of the action in the District Court, in what manner it was brought there. There can be no more reason to require the appellee or defendant in the *certiorari* to give security for costs, in the one case, than in the other; or than there is to require an appellee in any case to give security for prosecuting the appeal. It might as well be held, that a defendant who pleads in reconvention, or who has recovered before the justice upon a cross demand, should give security, if holding the affirmative of the issue imposes that duty. But although, as to his demand in reconvention, he does occupy the attitude of a plaintiff, it has never been supposed that the defendant could be ruled to give security for costs. He, plainly, is not within the provision of the statute; and I think the appellee, or defendant in the *certiorari*, is as plainly not within it, and that it was never intended to apply to his case.

As the former decisions and practice of the court are called in question, I have adverted to the reasons and grounds on which they have proceeded, more at length than the importance of the case, or of the question directly under discussion, would otherwise seem to require. If the present were a case of the first impression, I might not have thought it necessary to express my dissent publicly; for, upon such a question, it is of less consequence what rule is adopted, than that, when adopted, it should be consistently maintained, in order that the law and rule of practice may have the consistency and certainty essential to constitute a rational or a tolerable system of jurisprudence. It

is of but little consequence how such a question may have been decided, but when it has been decided, upon full consideration, and has come to be regarded and acted upon as the settled law, it is better, I think, that it be not unsettled, and the rule of practice rendered fluctuating and uncertain.

If the volumes of published decisions do not contain the law for future cases, coming within the same principle, where the question was fully considered and deliberately decided, it is difficult to perceive what benefit is to be derived from their publication. As has been said by Chief Justice PARSONS,—"Former decisions, if not furnishing a rule for posterior ones, would be worse than useless, as they would tend to mislead and perplex, without furnishing any useful information." (9 Mass. Rep. 367.) It seems to me, that there is quite uncertainty enough in the application of the law to cases as they arise, without unsettling what has been well and deliberately decided, and changing the rule of decision, even upon questions of practice, in themselves comparatively indifferent, with every change in the judicial mind. It is this view of the subject, which has seemed to me to require so full an expression of the grounds of my dissent from the present determination.

Reversed and remanded.