HARDEMAN CREWS, Plaintiff in Error, *v.* JOSEPH GARNEAU, Defendant in Error.

14 505
50 337

### December 18, 1883.

1. CONTRACTS. — He who enters into an executory contract and pays earnest money and then refuses to fulfil the contract, can not recover back the earnest money paid.

2. —— AGENCY. — An agent who disobeys the instructions of his principal may nevertheless bind his principal by his contracts made within the scope of his authority.

3. —— NOTICE. — Notice by the principal to the other party to an executory contract that the agent had, in making the contract, disobeyed instructions will not relieve the principal from obligations which have become fixed under the contract.

4. —— Where one of two innocent persons must suffer from the act of a third person, he must suffer who, by his act, has enabled the third person to do the wrong.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Affirmed.*

JOHN W. BOOTH and T. W. B. CREWS, for the plaintiff in error.

ALEX. MARTIN, for the defendant in error.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff authorized James P. Brennan, as his agent, to effect the purchase of certain lands belonging to the defendant. The agent was specially instructed as to price and terms of payment, and as to the sort of deed which the plaintiff would accept. He was also given a check for $500, with directions to place it in the hands of Alexander Martin, who was understood to be the defendant's attorney and adviser, as an earnest of the plaintiff's sincerity, and to be held by Martin until the consummation of the purchase upon the stipulated terms. Brennan, instead of conforming to his instructions, gave the check to the

defendant himself, and took a receipt in his own name, setting forth that the defendant was to give Brennan a quitclaim deed for the land, and otherwise expressing the terms of a sale and conveyance from the defendant to Brennan. These terms and the character of the deed mentioned, were totally different, in nearly every material feature, from those for which the plaintiff had stipulated in his instructions to the agent. Within a few days, and as soon as was reasonably practicable after receiving information of what had been done, the plaintiff informed the defendant that Brennan had been acting as his agent in the matter, protested against the terms expressed in the receipt, and demanded that they be so modified as to conform to the agent's instructions, or else that the check be returned to the plaintiff. The defendant refused to comply, tendered a deed in accordance with the terms of the receipt, which the plaintiff refused, and afterwards sold the land to a third person for a price less than that which the plaintiff had been willing to pay and which was expressed in the receipt. In this action the plaintiff charges that the defendant collected the amount of the check, and judgment is asked for that amount, with interest. The answer avers, among other matters, that defendant contracted to sell the land to Brennan, and so gave the receipt, and received the check as a payment made by Brennan upon his own purchase of the land. The cause was tried before the court without a jury and judgment was given for the defendant.

The testimony tended generally to show the facts embodied in the foregoing statement, without any material conflict except as to whether Brennan, in negotiating for the purchase, informed the defendant that he was acting for the plaintiff who was his principal, and not for himself. Brennan testified that he did so inform the defendant. The defendant, and another witness, testified to the contrary effect. As to the court's conclusions of fact, it is sufficient to say, that there was testimony substantially tending to

support them, and this leaves nothing for our review, but the action of the court in the giving and refusing of instructions. Those which the plaintiff deems material to the present inquiry, are the following : —

Given for the defendant : —

" If the court, acting as a jury, finds from the evidence that the check described in the petition was made payable to Brennan, and that Brennan indorsed and paid it over to defendant upon a contract of purchase, as is recited in the receipt on file, and that at the time of such payment the defendant was not informed that Brennan was acting as agent for plaintiff, and received the money or check from said Brennan, and agreed to sell to said Brennan the land described in said receipt upon the terms recited in the same, and that said defendant was ready and offered to perform said agreement by delivery of the deed called for in said receipt to Brennan, or to the person designated by said Brennan, after the delivery of the receipt, as the person to whom to make his deed, and that neither said Brennan nor his said appointee would accept the deed and pay the balance of the purchase-money, then defendant is not liable to plaintiff and the plaintiff can not recover.

" If the court, acting as a jury, finds from the evidence that Brennan was the agent of plaintiff for contracting for the purchase of the land with defendant, and making part payment thereon, and that defendant knew that Brennan was acting for plaintiff as his agent as aforesaid, and that the contract recited in the receipt was within the scope of the agency aforesaid, then the plaintiff is bound by such contract, notwithstanding secret and undisclosed instructions to said Brennan indicating a limitation on the authority of said Brennan, making the terms of said purchase ; and if said plaintiff is liable as aforesaid on said contract, and refused to accept the deed or complete said sale, then he is liable in damages for such refusal; and the measure of damages in such case would be the difference between the contract

price and the salable value of said lands at the time of the
breach aforesaid, which damages, if any, defendant would
have a right to recoup against the plaintiff in this action, if
the court should find as expressed in this instruction."

Given for the plaintiff : —

"If the court finds from the evidence that the plaintiff
is entitled to recover the amount of the payment made to
defendant by plaintiff through Brennan, by reason of said
Brennan having exceeded his authority as agent of plaintiff,
then plaintiff is entitled to recover interest upon said pay-
ment from the time when defendant was notified that plain-
tiff would not abide by the contract made by said Brennan,
but if the court should find that plaintiff is entitled to re-
cover the said payment by reason of the resale and convey-
ance of the said land by defendant, then plaintiff is entitled
to recover such interest only from the time of such resale
and conveyance."

Refused on the plaintiff's application : —

"1. If the court finds from the evidence that James P.
Brennan, as agent of plaintiff, was authorized for plaintiff to
enter into a contract with defendant for a conveyance by
defendant and his wife by special warranty deed of cer-
tain lands, and was not authorized for plaintiff to contract
for a conveyance by simple quit-claim deed of said lands,
and yet did enter into a contract with defendant for a con-
veyance of said lands by quit-claim deed without any war-
ranty, and as part payment of the consideration of such
contract, paid defendant by check or otherwise $500, the
property of plaintiff, and that within a reasonable time
thereafter plaintiff was notified of the particulars of said
contract and payment, and, in turn, within a reasonable
time thereafter, plaintiff notified defendant that in making
said contract and payment, said Brennan exceeded his au-
thority as agent of plaintiff, and that plaintiff would not abide
by said contract, and that from the time of such notice de-
fendant has recognized and treated plaintiff as the real party

in said contract, and has, since receiving said notice, sold and conveyed said lands, so that he no longer hath any interest therein; then by such resale and conveyance of said lands defendant has rescinded the said contract, and plaintiff is entitled to recover said payment.

" 4. If the Court finds from the evidence that James P. Brennan was authorized by plaintiff as his agent to contract with defendant, to pay defendant for a conveyance of certain lands a price not above $16 for each acre of said lands, and was not authorized as agent of plaintiff to contract to pay any attorney's fees incurred by defendant, or any taxes owing by defendant, and yet, as such agent, entered into a contract with defendant for the payment of $15.50 per acre, and for the payment of all taxes due on said lands, and for the payment of all attorney's fees incurred · by defendant on account of said land, and as part payment of the consideration of said contract, paid defendant $500, the property of plaintiff; then said contract and payment were without the authority of said agent, and plaintiff is entitled to recover the said payment from the defendant.

" 7. If the .court finds from the evidence that plaintiff authorized one James P. Brennan to buy for him upon certain terms the land of defendant, and that afterwards said Brennan, assuming to act as agent of plaintiff, made a contract with defendant for the purchase of said lands upon terms beyond his authority as agent of plaintiff, and upon such contract assumed to pay defendant, and did pay defendant $500, the property of plaintiff, and that at the time of making such contract and payment, defendant was told by said Brennan that he was making said contract for himself, and that within a reasonable time after the making of said contract and payment, plaintiff was informed of the terms of said contract, and of the fact of said payment, and notified defendant within a reasonable time, that in making said contract and payment said Brennan in fact acted as agent of plaintiff, and had purchased the land

upon terms not authorized by plaintiff, and had paid plaintiff's money thereon, and that plaintiff would not abide by such contract, and that notwithstanding such notice the defendant persisted in holding said payment, and attempted to compel plaintiff to perform said contract, by tendering plaintiff a conveyance of said lands, or by entering into any arrangement with plaintiff, whereby actual tender of a deed was waived, and resold and conveyed said land without tender of a conveyance thereof to said Brennan, or otherwise seeking to hold said Brennan liable as principal in said contract; then, as there is no evidence in this case tending to show any material change in the situation of the parties or of the property which was the subject of the contract, between the time when the contract was made, and the time when the defendant was notified of the true character in which Brennan acted in making the contract and payment, the fact that Brennan told defendant he was buying for himself, is not material to plaintiff's right to recover the payment so made by said Brennan.

"10. Defendant avers that the damages he asks to recover are the result of a second sale made by him after plaintiff had refused to comply with the terms of the first sale, for a less price than Brennan contracted to pay, but he does not aver nor introduce any evidence tending to show that such second sale was a forced sale, nor that the property or his interest therein deteriorated in value between the first and second sale, nor that the plaintiffs' alleged breach affected the market value of his interest in the property, nor that before making the second sale he notified plaintiff or Brennan of his intention to resell the property; and therefore the difference between the last sale and the first sale ought not to be regarded as evidence of the amount of the damages defendant may have sustained.

"11. If the court finds from the evidence that James P. Brennan made the payment to defendant and accepted the

receipt therefor, read in evidence in this case, upon such a misunderstanding of the contract between himself and defendant that he believed said contract to contain provisions which it did not in fact contain, and believed it not to contain certain provisions which defendant believed and maintains that it did contain, then there was no such agreement between said Brennan and defendant as is necessary to make a binding contract; and the payment made to defendant was made without consideration, and defendant is entitled to no relief or damages for the failure of plaintiff to carry out the contract as understood and assented to by defendant.''

The first instruction given for the defendant was clearly proper. It asserts the familiar rule that, if two persons enter into an executory contract and one of them pays earnest money on the agreed consideration, and afterwards fails and refuses to fulfil the contract on his part, he can not recover back the earnest money paid. In the hypothesis presented, there was nothing to put the defendant upon inquiry as to the ownership of the check, but everything to induce an honest belief that it was Brennan's property, and that Brennan was using it in a purchase of the land for himself. As to the second instruction, whether it was right or wrong can be of no consequence to the plaintiff, since the court allowed nothing for recoupment to the defendant, having evidently found, as a fact, that the defendant did not treat with Brennan as an agent for the plaintiff. We think, however, that the instruction correctly stated the law.

An erroneous theory, pervading all the plaintiff's instructions which were refused, seems to hold the defendant responsible for the derelictions of Brennan, upon a mere notice from the plaintiff that Brennan had been derelict. Every proper instruction in the case should provide, inferentially or otherwise, for a hypothesis that the defendant was ignorant of Brennan's agency. Upon that hypothe-

sis—which the trial court found to be the true one—the defendant, when he closed the trade with Brennan, received the check from him, and gave the receipt specifying the terms of the agreement, acquired certain contract rights which were fixed then and there. Nothing was wanting to complete his *status*, as the holder of a valid claim upon Brennan for an entire execution of the contract settled between them. How can it be conceived that the rights so vested in a vendor and fully sanctioned by existing law, could be set aside or impaired by subsequent information of wrongs done to a third party, in which the vendor had no part, and of which he had not even any knowledge? The bad faith of Brennan with the plaintiff, if any, is a matter to be settled between them. The measure of the plaintiff's damages, as against Brennan, may possibly cover, not only the conversion of the check, but the consequences resulting from the loss of a beneficial trade, whose consummation had, for a consideration, been entrusted to him by the plaintiff, and assumed by Brennan. But with all that the defendant had nothing to do, when his contract rights accrued. The plaintiff, by making the check payable to Brennan, had put it in his power to trade upon the paper as his own, with no ground for inquiry or even for hesitation, on the part of any person to whom he might offer it. The familiar rule referred to by plaintiff's counsel—that, where one of two innocent persons must suffer by the act of a third, he must suffer who has reposed the confidence which enabled such third person to do the thing complained of—is precisely in point, and fixes the loss upon the plaintiff. It is unquestionable, further, that Brennan was in a position to enforce specific performance of the contract shown by the receipt, against the defendant. Could the defendant have resisted such a proceeding on the ground that Brennan was only an agent, and exceeded his authority? Assuredly not. How, then, shall he be denied the benefits of a contract, while bound by its liabilities?

If the plaintiff's doctrine is to prevail, no man can ever know what are his contracts, or at what period his rights under them will have become vested. An agreement may be solemnized with all the forms of law, and may yet be broken up by the advent of a stranger, who will say to one of the parties : " The person with whom you have contracted was my agent, and I did not authorize him to make that contract."

The plaintiff insists that the defendant, upon receiving notice of Brennan's agency, and of his violated instructions, was bound to return the check and cancel his contract, because he had not yet conveyed the land, or given possession. We know of no principle, in law or equity, which sustains such a view. If, at the time of making the contract, there had been any notice to the defendant, or anything to put him upon inquiry, his contract rights would have taken effect, subject to any equities involved in the matter of such notice or cause for inquiry. And this would be true at any time before, and up to, an actual change of *status*, by virtue of the contract, without such notice or cause for inquiry. But here, the defendant was not in *statu quo* when he received the notice. He had bound himself in a contract to convey the land, and, so far, was no longer an untrammelled owner of the property. He had acquired an absolute right to the purchase-money, upon the agreed terms. Neither his rights nor his obligations were qualified by any equities of which no intimation was given, until after such rights and obligations had accrued.

That the plaintiff has suffered a wrong, need not be questioned. But he should seek redress from him who inflicted the wrong, and not from this defendant who, in exercising an unquestionable right to contract for the sale of his land, neither knew of, nor had any reason to suspect, that the plaintiff was in any way interested in the transaction. Such, at least, was the finding of fact by the trial

court, and, upon that basis, the judgment was for the right party. We find nothing in the record to justify a reversal. With the concurrence of all the judges, the judgment is affirmed.

LEWIS, P. J., delivered the opinion of the court on the motion for rehearing.

The earnest and able argument offered in support of the motion for a rehearing rests, for all it is worth, upon a single fundamental proposition, to wit: that the improper use made of the check by Brennan was such a conversion of the plaintiff's property as left in the plaintiff a right to reclaim it in the hands of the defendant, or wherever else he might find it; and especially, upon a demand made before the holder had actually conveyed the real estate contracted for and sold, with the receipt of the check as a part of the consideration. If this proposition is correct, there need be no further argument to establish the plaintiff's right of recovery. But if it is unsound and subversive of well established principles, then all the deductions set forth and amplified in the carefully prepared briefs for the plaintiff must fall with it.

Whether or not the act of Brennan in misusing the check amounted to a conversion of the plaintiff's property, is by no means the vital inquiry in this case. It furnishes no test of the plaintiff's rights, except as against Brennan himself. If A. steals the horse of B. and sells it to C., B. may reclaim his property from C., or from his transferee, as upon an unchanged ownership. This, however, is not because of the sale and conversion, but because of the original theft. The owner is innocent of any act from which C., or anybody else, might have reason to suppose that the thief had any rights in the property. But the books are full of cases wherein, while the owner may maintain an action against his bailee for a conversion or misappropriation, he will yet have no remedy against the innocent

holder of the property for value, or for a lawful consideration. Especially is this true as to money, checks, and negotiable paper generally. The necessities of trade and the laws of commerce have long since settled that, as to such instruments, their negotiable character raises a presumption of ownership in the present holder, beyond which an intending purchaser need never look for an assurance of the title, unless specially put upon inquiry by some suspicious circumstances. In the leading case of *Miller* v. *Race* (1 Burr. 452), before Lord Mansfield, it was held that "a bank-note, though stolen, becomes the property of him who gives valuable consideration for it, having no notice or knowledge of the robbery." In *Grant* v. *Vaughan* (3 Burr. 1516), the doctrine was reaffirmed and adjudged applicable, in like manner, to every description of negotiable instruments. In *Lawson* v. *Weston* (4 Esp. 56), a bill of exchange, accepted by the defendants, was lost by or stolen from Shears, the owner, who immediately advertised the loss. An unknown person found the bill, and procured it to be discounted by the plaintiffs. It was held that the plaintiffs were the lawful owners, and were entitled to recover. In *Buck* v. *Kent* (3 Vern. 99), the payee was in possession of a note, which the maker was entitled to have returned to himself. The payee, however, wrongfully transferred the note to a third person. It resulted that the assignee, as owner, had judgment against the maker, although the maker successfully maintained trover and conversion against the payee. That case, in its salient features, bears a striking resemblance to the one before us; the plaintiff here occupying the place of the maker, Brennan that of the payee, and the defendant that of the assignee. The rule is sustained by an unbroken train of authority, with a general concurrence in the remark of Lord Kenyon, that a contrary principle, " would at once paralyze the circulation of all paper in the country, and with it all its commerce." *Jones* v. *Nellis*, 41 Ill. 482.

If a legal investiture of ownership in the present holder, in defiance of the claims of one who has been deprived of it by wrong, accident, or fraud, may thus result from the presumption of transfer attaching to the fact of negotiability, how much stronger must the case be against a party who adds to this presumption a deliberate notice to all the world, that he has parted with the ownership, in favor of the person who afterwards passes the paper to an innocent assignee. Such was the act of the present plaintiff when he made his check payable to the order of Brennan.

But it is insisted that the defendant parted with nothing, as a consideration for the check. It can hardly be necessary to remind learned counsel that contract rights are as sacred in the eye of the law as any right of ownership in property. The defendant acquired certain contract rights, and assumed certain liabilities, in his transaction with Brennan. The plaintiff refuses to recognize the first, and has never had it in his power to release the last. Nor was the defendant under any obligations to accept such a release, if it had been tendered him by the proper person. This suit asks us, in effect, to compel him to accept the release, even from a person not authorized to give it, and also to surrender his duly acquired contract rights against Brennan.

Counsel say that Brennan was only a messenger, bearing a letter to Martin which contained the check, and which he opened without authority, in order to withdraw the check and deliver it wrongfully to the defendant. That, therefore, Brennan was not to be regarded as an agent, conducting a negotiation for the plaintiff. The authorities above cited show that, if this were true, it would be wholly immaterial, as affecting the defendant's right to keep the check. But the position is hardly consistent with the plaintiff's constant claim that Brennan's purchase was affected as a mere act of agency for the plaintiff who, as principal, might insist upon an adherence to the instructions he had given. Nor is it

consistent with the terms of the letter which Brennan bore. In that, the plaintiff's father says: "My son, Hardeman Crews, has just contracted, through Judge Brennan, for two hundred and forty acres of land belonging to Mr. Joseph Garneau," etc. He says, further: "Judge Brennan will hand you, or Mr. Garneau, a check for $500," etc. The last expression savors strongly of an agency in Brennan, with at least a discretion as to who should receive the check from him. But, as before said, all this is immaterial, when we consider that the check was made payable to the order of Brennan, and that nothing occurred to put the defendant upon inquiry as to his title and right of transfer.

The whole question in this case is, not so much whether the plaintiff has suffered a loss, for which he ought to be indemnified, as it is, whether he is undertaking to procure indemnity from the right party. Upon the record here made, there could hardly be a question as to Brennan's responsibility to the plaintiff. If a judgment against him would be unavailing, this argues only that it was the plaintiff's misfortune to put his trust in a faithless insolvent. It can furnish no sort of reason why the present defendant should be called upon to make things even. Courts can not gauge the extent of a party's liabilty by the state of his bank account. We may recognize the fact that a loss and hardship have fallen upon the plaintiff, but we can not change the conclusions already announced in this cause without reversing our firm convictions of the long established and well settled rules of law, and assuming the legislative function of creating new ones.

The motion for a rehearing must be overruled. All the judges concur.