C. L. MILLER ET AL. v. DALLAS CONSOLIDATED STREET RAILWAY CO.

No. 2113. Decided January 25, 1911.

**1.—Agency—Contract—Approval of Principal.**

An agent authorized to make a contract for his principal (settlement of damage claim for personal injuries) may, instead of concluding one, negotiate an agreement subject to the approval of the principal, who, if he refuses approval, will not be bound by such contract, though the agent might have bound him by making one not so subject. (P. 60.)

**2.—Agent Exceeding Instructions—Notice.**

If an agent with written authority to contract violated his principal's instructions in doing so, an innocent party would be protected; but if the latter paid over the consideration to the agent after notice that the principal repudiated his contract, though not of his reason for doing so, he would act at his peril in making payment, being put on inquiry by the repudiation as to whether the agent had not exceeded his instructions. (Pp. 60, 61.)

**3.—Same—Case Stated.**

One having a claim for damages for personal injury employed attorneys to prosecute, assigning to them an interest in the claim and authorizing them to

compromise with defendant. They negotiated a settlement, a written release being prepared to be signed by the client. The latter, claiming that the attorneys had violated his instructions in settling for such amount, refused to deliver the release or accept the money and notified the defendant that the settlement was repudiated. Defendant then completed the settlement by contract with and payment to the attorney. Held, that a peremptory instruction to find for defendant in the action for damages was unwarranted, the case presenting a question of fact as to whether the original settlement was intended to bind plaintiff till approved by him, and whether it was not made in violation of the agent's instructions and consummated, after knowledge putting the defendant on inquiry as to such fact. (Pp. 58-61.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

Miller and wife sued the street railway company and defendant had judgment which was affirmed on appeal by plaintiff, who then obtained writ of error.

*Wm. H. Clark* and *Fitzhugh & Smith,* for plaintiffs in error.—It was error to direct verdict for defendant. Const., art. 1, sec. 15; Rev. Stat., 1895, art. 1317; Gaunce v. Railway Co., 20 Texas Civ. App., 33; Choate v. Railway Co., 90 Texas, 82; Bonner & Eddy v. Glenn, 79 Texas, 531; Railway Co. v. Gasscamp, 69 Texas, 545; McCray v. Railway Co., 89 Texas, 168; Bowman v. Brewing Co., 17 Texas Civ. App., 446; Shifflet v. Railway Co., 18 Texas Civ. App., 57; Bonn v. Railway Co., 82 S. W., 808; Railway Co. v. Cade, 100 Texas, 37.

There was evidence to raise the issue of fraud. Railway Co. v. Miller, 24 Texas Civ. App., 395; Railway Co. v. Miller, 21 Texas Civ. App., 609; Brown v. Bunger (Ky.), 43 S. W., 714.

*Baker, Botts, Parker & Garwood, Spence, Knight, Baker & Harris,* and *Walter H. Walne,* for defendant in error.—The power, being coupled with an interest, was irrevocable, and the settlement valid in absence of fraud, of which there was no evidence. 20 Cyc., 120, sec. L.; Gulf, C. & S. F. Ry. Co. v. Huyatt, 99 Texas, 630; Houston & T. C. Ry. Co. v. Hill, 63 Texas, 381; Life Insurance Co. v. Hanna, 81 Texas, 491; Alabama & V. Ry. Co. v. Turnbull (Miss.), 16 So., 346; Mason v. Bannon, 62 Ill., 76; Houston & T. C. Ry. Co. v. McCarty, 94 Texas, 298; Quebe v. Gulf, C. & S. F. Ry. Co., 98 Texas, 10; Railway v. Miller, 53 S. W., 709; Railway v. Miller, 60 S. W., 259; Galveston, H. & S. A. Ry. Co. v. Paul Ginther, 96 Texas, 295; Daugherty v. Moon, 59 Texas, 397; Wells v. Littlefield, 59 Texas, 556; Hennessee v. Johnson, 36 S. W., 774; Tinsley v. Dowell, 87 Texas, 29; Hunt v. Rousmanier, 8 Wheat., 174; Kane v. Chester Traction Co., 40 Atl., 320; Duffy v. Metropolitan Life Ins. Co., 47 Atl., 905; Wagoner v. National Life Ins. Co., 90 Fed., 395; 34 Cyc., 1660.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This action was brought by plaintiffs, who are husband and wife, to recover damages for personal injuries sustained by Mrs. Miller in alighting from one of the street cars of the defendant. The case went off in the District Court upon a verdict peremptorily directed by the trial judge because of a settlement and release effected by a former attorney for plaintiffs, and not on the question of the original liability

of the defendant for the injuries suffered by Mrs. Miller. There was evidence tending to establish such liability, and to show that Mrs. Miller was seriously injured, and that, after about five weeks, she suffered a miscarriage, and that her health has been greatly impaired. The settlement and the execution of the release took place between the dates of the accident and of the miscarriage, and while, according to some of the testimony, there were indications that Mrs. Miller was in danger of such an occurrence. As we hold that there were questions of fact that should have been submitted to the jury upon which the binding force of the settlement depended, we shall only outline the case in order to indicate the issues for another trial, and shall not attempt to state or comment upon the evidence in detail.

After Mrs. Miller was injured, her husband made a contract with a firm of attorneys to represent them in pursuing their claim for damages, assigning to them a half interest therein and empowering them to settle, compromise, or sue, as they should deem proper. One of the attorneys who acted throughout having broached the subject of a settlement with the assistant claim agent of defendant, received an offer of $100 which was reported to Miller. At this point begins a conflict of evidence between the attorney and Miller. The former states that after discussion and further unsuccessful efforts to obtain a better offer from defendant they agreed to make the settlement proposed. Miller asserts that he declined to settle for so small an amount and so told his attorney, referring to the uncertainty as to the extent of his wife's injuries. The attorney, as both he and the assistant claim agent testify, informed the latter that Miller had assented, and, in accordance with defendant's uniform custom, a release was prepared by the agent upon a blank, such as were used for that purpose, to be presented to and signed by Miller. This instrument called for statements by the signer that he was twenty-one years of age, that he relied wholly on his own judgment, belief and knowledge of the nature, etc., of the injuries and that no representations, etc., by the company's agents, etc., had influenced him to make the settlement. The paper was delivered to the attorney to be signed by Miller; also an order was given to the attorney from the claim agent addressed to the proper officer of the defendant for the issuance of a voucher for the money. The evidence again conflicts as to what was said when the attorney, on July 16th, 1906, presented the release to Miller for signature, the former stating that Miller signed it with witnesses and went with him to the defendant's office to receive the money; and the latter stating that he angrily rejected the settlement, charged the attorney with collusion with defendant and repudiated his further services; and that, although in his anger and for some inexplicable reason he signed the paper with witnesses, he put it in his pocket, refused to deliver it and went to the defendant's office for the purpose of giving notice of his action and repudiation of the attorney. The officer of the defendant whom he sought was not in his office and nothing further was then done. According to the attorney, Miller first repudiated the settlement a day or two after this transaction. That he did repudiate it and refuse to deliver the release or accept any part of the money is conceded.

After the representatives of the defendant had learned of Miller's

refusal to return the release, they took one signed by the attorneys, with the contract between them and Miller attached, and then the check for $100, which had been held in the defendant's office for delivery upon Miller's execution of the release, was delivered to the attorneys and the money was collected and half of it held for Miller's account.

The defense relies on the transaction of July 16th, when the release for Miller's signature was prepared, as constituting a binding contract of settlement between it and Miller's attorney, acting under the authority expressly given him to settle and compromise, treating the subsequent written release signed by the attorneys merely as the formal closing up of a contract already complete. But we think this assumes too much, in that it treats the transaction as if no other effect could reasonably be imputed to it. That such a contract could have been made with the attorney, upon his authority alone, may be admitted. But it was equally competent to conduct the negotiation and preparation of the details with the understanding that Miller was to do the final act essential to the completion of the contract of settlement in giving his assent thereto by signing the release. The law is thus stated:

"So if A makes an agreement with B's agent in the form of a contract, but subject to B's approval, this is in legal effect an offer by A to B and may be revoked at any time before B accepts. So a contract signed by an agent, which is not to go into effect until approved by his principal in writing, has no effect till then." (1 Page on Contracts, section 53.)

A careful reading of the evidence makes it quite clear to us that there are circumstances from which a jury could infer that, instead of concluding the contract as a finality between themselves, as they might have done, the defendant's agent and the attorney so shaped their transaction as to involve, as a part of it, Miller's assent, and it follows that the courts below erred in holding that there was no question to be submitted.

But, if it be true that there was a complete agreement between the attorney and the agent in which the assent of Miller was not contemplated as essential to the settlement, can the defendant make good its defense thereunder if the attorney was in fact violating his instruction and disregarding his client's interests, notwithstanding the fact that before it paid the money either to attorney or client, or changed its position in any way on faith of the agreement, it received notice of the fact that Miller had refused to deliver the release which he was to sign? We think it is true that there is no evidence of collusion of the claim agent with the attorney, nor of notice on the part of the former of any violation of instruction by the latter received prior to the transaction of July 16th, and we may concede that the reason for Miller's refusal to return the release was not disclosed to the defendant before the money was paid, although there is some evidence to the contrary; but we think it is true, also, that if there was in fact good reason as between Miller and his attorney for the course thus taken by the former, the defendant would be affected with notice of it by knowledge of the fact of repudiation, and could only go forward in doing what had been agreed on at its own risk. Information that Miller would not act as his attorney agreed he should act, meant a

repudiation of that agreement for some reason; and if that reason, in truth, was that, notwithstanding the power given in the written contract of employment, the right of the attorney to make the proposed settlement had been denied by express instructions which he had violated, the defendant, knowing the fact of repudiation, should be charged with notice of the reason for it which it could have ascertained by proper inquiry, and had not the right to aid the attorney in defeating the client's instructions by going forward without investigation and paying the money over to the attorney. The written contract between Miller and his attorneys gave them an authority and an interest in the cause of action which they would not have had under a general employment as his counsel, but it did not lessen their duty to him in that capacity. The interest in the cause of action was given as their compensation for faithful service as his attorneys, and not to enable them to pursue their own interests without regard to his. (Clark & Skyles Agency, p. 658 and cases cited.) The power to settle was given to enable them to make a settlement with proper regard to his instructions and conducted in fairness to him as well as to themselves, and not to make their authority superior to his and render them wholly independent of his control. Kelley v. Chicago, etc., Ry. Co., 113 Mo. App., 468, 87 S. W., 583; Brown v. Bunger (Ky.), 43 S. W., 714.

A settlement fairly consummated with the attorneys without notice of any violation on their part of Miller's instructions would be binding on him, because the defendant would have had the right to rely on the general authority given. But this would not be true if there were knowledge at the time of the agreement that the attorneys were acting contrary to instructions given by the client. Mechem on Agency, sec. 279.

This much will hardly be disputed, and we think it equally true that a mere agreement with the attorney, in fact forbidden by the client, to pay a stipulated sum in satisfaction of the claim for damages, however definite and final it may have been intended to be, ought not to be enforced against the client if it was rejected by him to the knowledge of the defendant before payment to the attorney. Crews v. Garneau, 14 Mo. App., 505; 1 Cyc., 313-14-16, 336.

It is unnecessary to consider the circumstances, if there be such, in which an attorney might effect a valid settlement under such a power as that under consideration over the arbitrary and unreasonable interference of the client. Such objection as Miller says he urged to the settlement in question can not, in any aspect, be regarded as anything more than he had the right to interpose. Of course, if Miller in fact agreed to the making of the proposed settlement, or left the attorney free to make it, he would be bound, although after his effort to repudiate it the money was paid to the attorney. In such case the action of both the defendant and the attorney would be rightful.

The judgments below will be reversed and the cause remanded for trial in accordance with this opinion.

*Reversed and remanded.*