## J. I. CASE THRESHING MACH. CO. v. LOCHRIDGE & DENNY. (No. 1163.)

(Court of Civil Appeals of Texas. Amarillo. May 2, 1917.)

1. JUSTICES OF THE PEACE ☞206(1)—CERTIORARI—MOTION TO DISMISS—STATUTE.

Motion to dismiss certiorari directed to justice of the peace, under Rev. St. art. 754, allowing such dismissal for "want of sufficient cause appearing in the affidavit or for want of sufficient bond," must be confined to the statutory grounds.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 802-806.]

2. JUSTICES OF THE PEACE ☞206(1)—CERTIORARI—MOTION TO DISMISS—CONCLUSIVENESS OF RECORD.

Neither petition for dismissal of certiorari directed to justice of the peace nor court's order as to time when writ was ordered can be contradicted by affidavit or oral evidence.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 802-806.]

3. JUSTICES OF THE PEACE ☞208(2)—CERTIORARI — COPARTIES—PETITION—JURISDICTION.

Where a justice of the peace sent up the record on certiorari to county court on one defendant's petition, where it was filed and writ properly issued thereon, reciting that both defendants had filed petitions, the court acquired jurisdiction of the entire cause, in view of Rev. St. art. 760, providing for trial de novo in such case, although the other defendant failed to file petition within time allowed.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 808-811.]

4. JUSTICES OF THE PEACE ☞206(1)—CERTIORARI—NONSUIT AS TO ONE DEFENDANT—EFFECT.

Where plaintiff took a nonsuit against one defendant, who had removed case on certiorari, this did not affect the writ as to the other defendant, since the court thereby acquired jurisdiction of the entire cause.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 802-806.]

5. SALES ☞89—ACTION BY BUYER—SUBSTITUTED CONTRACT.

Where an agent represented to buyers the amount of freight charges if four engines ordered were shipped together, the order being subject to the manufacturers' acceptance, and they shipped only two engines, which plaintiff's accepted, plaintiffs could not recover excess freight paid, since by accepting two engines, instead of four ordered, with full knowledge of facts and freight rates, they entered into a new contract with the manufacturers, to which the agent's representations did not relate.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259.]

6. SALES ☞170—ACTION BY BUYER—DELAY—ACCEPTANCE OF GOODS.

Where a buyer accepted engines shipped by defendant, but not in accordance with original agreement, by paying draft attached to bill of lading, the railway company, and not defendant, was liable for delay occurring thereafter, since, until plaintiff accepted goods, there was no contract to deliver at a particular time or place, and after acceptance defendant was not liable for the railway company's delay.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 424.]

7. SALES ☞178(1)—SYMBOLICAL DELIVERY—PAYMENT OF DRAFT ATTACHED TO BILL OF LADING.

The acceptance and payment of a draft attached to a bill of lading is a symbolical acceptance of the goods, in absence of contract provisions.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 451.]

Error from Wichita County Court; Harvey Harris, Judge.

Action by Lochridge & Denny against the J. I. Case Threshing Machine Company and another. Judgment for plaintiffs in justice court, and defendant named removed the case on certiorari to county court, where plaintiff had judgment, and said defendant brings error. Reversed, and judgment rendered for defendant.

Spence & Haven and W. J. Rutledge, Jr., all of Dallas, for plaintiff in error. J. M. Blankenship, of Wichita Falls, for defendants in error.

HUFF, C. J. The first question demanding attention is defendant in error's cross-assignment, to the effect that the county court was in error in overruling their motion to dismiss the writ of certiorari granted upon plaintiff in error's petition, by which the case was brought into the county court of Wichita county from the justice court of precinct No. 2 of that county. The defendants in error instituted suit against the plaintiff in error and the Missouri, Kansas & Texas Railway Company in the justice

court for damages. In that court a joint judgment was rendered in favor of defendants in error against the J. I. Case Company and the Missouri, Kansas & Texas Railway Company of Texas for $59, and against the J. I. Case Company for $50.15. That judgment was rendered on the 20th day of September, 1915, by default. C. E. Schaff, as receiver of the Missouri, Kansas & Texas Railway Company presented his petition for writ of certiorari to the county judge of Wichita county. This petition was sworn to on the 15th day of December, 1915, and has indorsed thereon the order of the county judge to issue the writ upon the execution of a bond in the sum of $100. The bond was executed on the 15th of December, 1915, and it, together with the petition and the order of the judge, were marked "Filed" on that date. The J. I. Case Company presented its petition for writ of certiorari to the judge. This petition was sworn to on the 17th day of December, 1915. It has indorsed thereon the order of the judge to issue the writ, which order is dated December 18, 1915. The bond for $250 was executed in accordance with the order. The petition and bond were filed on the 18th day of December, 1915, and the order dated of that date, as shown by the record. The clerk on December 15, 1915, issued the writ prayed for to the justice of the peace, reciting that Schaff, as receiver of the railroad, and J. I. Case Company, had obtained an order from the county judge for a writ of certiorari to remove the case to the county court. On the 28th day of December, 1915, the clerk issued a writ of certiorari, reciting that the J. I. Case Company had obtained an order for the writ. As shown by the record, on July 8, 1916, the defendants in error filed a motion to dismiss the certiorari on alleged defects in Schaff's petition, and on the 11th day of February, 1916, they filed a motion to dismiss the certiorari as to the J. I. Case Company, on the alleged ground that it was filed more than 90 days after judgment in the justice court. We have been unable to find any order by the court evidencing his action on either of the motions, but on February 11, 1916, final judgment was entered in this cause, reciting that all parties in person, naming them, and by their attorneys, appeared and announced ready for trial. "After announcing ready for trial, plaintiffs made motion to nonsuit against the Missouri, Kansas & Texas Railway Company of Texas and C. E. Schaff, receiver, and said motion, not being contested by J. I. Case Threshing Machine Company, was granted." And the judgment then recites the issues between the latter company and the plaintiff therein were tried before the court. In the statement of facts we find the purported agreement to the effect that the 90 days' from the rendition of final judgment in the justice court fell on the 18th day of December, 1915;

that on that day the petition was not actually presented by the attorney for the plaintiff in error to the county judge, he having left the town and could not be reached that day, but the petition for the writ and bond was filed with the clerk of the court, and upon the judge's return home some two days after he signed the order granting the writ.

[1] It is urged under article 747, R. C. S., the court could not grant the writ at that time and he should have dismissed the petition of plaintiff in error. That article provides the writ shall not be issued after 90 days from final judgment of the justice of the peace. Article 754 provides the motion to dismiss at the first term of the court to which the writ is returnable may be presented "for want of sufficient cause appearing in the affidavit, or for want of sufficient bond." The motion to dismiss the writ of certiorari, as held in Webb v. Texas Christian University, 48 Tex. Civ. App. 264, 107 S. W. 86, should be confined to the statutory grounds. The article "seems to imply that a motion should not prevail predicated upon any other defect in the proceedings than those named in the statute. * * * We are inclined to the opinion these are the only causes for which a party may have to dismiss the certiorari proceedings. The statute has heretofore received the same construction by the courts. Peck v. Reed, 3 Willson, Civ. Cas. Ct. App. § 265; 2 W. & W. § 108."

[2] It has been held repeatedly that on a motion to dismiss the proceedings by certiorari that the petition must be looked to, and cannot be impeached by affidavit or evidence contradicting the statements therein. Von Koehring v. Schneider, 24 Tex. Civ. App. 469, 60 S. W. 277. For a stronger reason we do not think the order of the court as to the time when the writ was ordered should be permitted to be contradicted by oral evidence.

[3] Again, we do not think this supposed defect should prevail, for the reason that the justice of the peace sent up the record, and it was filed in the county court upon the receiver's petition, and the order and writ issued thereon, which were filed and issued within the statutory time; the writ thereon reciting that both parties defendant in that court had filed their petition. This appears to us to have given the court jurisdiction of the entire cause. After the case was so carried up by the receiver, the cause should be tried, and was required by the statute to be tried, de novo. Article 760; Miller v. Holtz, 23 Tex. 138.

[4] When the defendant in error, in the county court, took a nonsuit as to the railroad and its receivers, this did not have the effect of a judgment that the writ of certiorari was wrongfully granted. The writ still retained its force, and the judgment of dismissal in the county court did not revive the judgment of the justice court, but in effect

was an admission that the judgment before the magistrate was erroneous as to the railway and the receiver. Defendants in error were therefore required to establish their claim in the county court against plaintiff in error, and the county court, having properly granted the writ as to the receiver, obtained jurisdiction to render the judgment which should be rendered against the proper parties. In short, the petition of the receiver, and the order of the court thereon, brought up the entire controversy for adjudication de novo. The county court, therefore, had jurisdiction, and its action on the defendants in error's motion becomes harmless, even if erroneous, which it was not, as we understand the law. It will also be noted that the motion to dismiss the receiver's petition was not filed until in July after the final judgment in the county court in February.

The defendants in error, L. M. Lochridge and L. C. Denny, sued to recover damages from the J. I. Case Threshing Machine Company for failure to ship two traction engines under an alleged contract, and that the contract or order was fraudulently procured by one Preston, the agent of plaintiff in error, upon the representation that the freight on each traction would be $45, when in fact it was $70.14, an excess of $25.14, for each engine shipped; that because of the failure to deliver the engine in the time contracted defendants in error suffered damages, on account of their inability to plow their land and for loss of time and wages paid for help for two days. The case was tried before the court without a jury. Judgment was rendered for Lochridge for $25.14 on overcharge in freight, $23 for damages to land, and $12 for loss of time and the hire to two extra men; and judgment for Denny, $25.14 excess in freight, $4 loss of one day's time for himself and an extra man, and $23 for damages to land.

The facts in this case show that one Preston, as agent for plaintiff company, took the joint order of L. M. Lochridge, L. C. Denny, and J. T. and W. W. Overby, on July 8, 1915, for four 10–30 horse power gas engines, agreeing to pay $2,880 for the four engines, and to receive the same on cars on arrival and pay the freight and charges thereon. The order was sent in, signed by the four named parties, and addressed to the plaintiff company. It was stipulated in the order that it was taken subject to approval, and to be sent to the company for acceptance or rejection. The company was directed thereby to ship or deliver at once, or as soon thereafter as it could furnish for transportation or delivery. The plaintiff company, upon receipt of the order notified its dealer at Iowa Park, Tanner, that it did not have four such engines in stock, but shipped to itself at Wichita Falls two engines, and it drew a draft for $1,440, with the bill of lading attached, which was forwarded to a bank at Iowa

Park. Tanner notified the parties executing the orders that the four engines could not be had at that time, as plaintiff did not have them in stock, but that two had been shipped, and the others could be had later. Lochridge and Denny saw the Overbys, and the parties agreed among themselves that Lochridge and Denny should take the two engines so shipped, which they did.

Lochridge testified that Preston told him and Denny, before the order was taken, that if they would get two other men to buy gas tractors, so that all four could be loaded into one car, the freight would be $45 for each of them, and that they could get a cheaper freight rate that way than if less than four engines were shipped. Denny's testimony is substantially the same, and in fact this is uncontroverted. The bank held the draft and bill of lading. In order to get the engine, Lochridge induced Tanner to go with him to Wichita Falls, and took the draft and bill of lading with him, the bank trusting him therewith, but with the instruction not to deliver them until the draft for $1,440 was paid. After arriving at Wichita Falls, Lochridge offered to pay the freight on both engines, $70.14 each, and to pay for one engine $720 cash, the price of the engine. Tanner refused to accept this, but required the money for both engines, and that the draft be paid before he would deliver the bill of lading. On the next day Lochridge procured Denny to go with him and they then paid the draft, each paying for one engine, and each the freight charges on one engine, and, as we understand, the bill of lading was then delivered to them.

[5] Under these facts, was the defendant in error entitled to recover the difference between $45 and $70.14 each on each engine? Under their written order for the four they agreed to pay the freight charges. The promise of Preston was not a guaranty that the charges should not exceed $45, but simply a statement that, if four were shipped in one car, the freight would be less than if there should not be a carload, and would be for each $45. There is no evidence that this was a misrepresentation or false. So far as the record shows, it was true. The only ground of complaint that we can perceive defendants could make is that the plaintiff did not ship four engines as ordered; but this cannot avail defendants, for the reason that in making the order they expressly stated that the order was subject to plaintiff's approval, acceptance, or rejection. Plaintiff did not approve or accept the order, but rejected it as made. There was, therefore, no contract; the parties did not reach an agreement. Summers v. Mills, 21 Tex. 78; Miller v. Dallas, etc., 104 Tex. 57–60, 133 S. W. 866; Whitaker v. Zeihime, 61 S. W. 499; Connell v. Nickey, 167 S. W. 313–320 (6). When the plaintiff shipped only two engines, consigned to itself, with bill of lading attached to the draft, the defendants'

were under no obligations to take them; but, after receiving notice of that fact, they agreed with the other parties to the order that they would take the two engines, knowing then the freight charges exceeded $45. They paid the price of the two engines to the bank and the freight charges to the railroad. In doing this they were not deceived. They were not required to take the engines, and when they did they made a new contract, based upon entirely new conditions from those stated by Preston when they gave the order. His statement could not have induced them to make the last contract to take the two, instead of four, engines. We are of the opinion that defendants were not entitled to recover the difference in the freight.

[6] It is also contended Preston represented that the engines would arrive in 10 days, and the trial court finds it was 21 days before they actually did arrive. It was testified by the defendants that there were green weeds and grass on their land, and that they desired to turn under this vegetation, which would have benefited the land to the value of $1 per acre; that the land was in good condition for plowing when the order was given, but after the engines came the ground became dry and hard, and only about six days' plowing could be had. Under the order as above set out, and the nonacceptance thereof, there could be no recovery up to the time of the execution of the new contract as above mentioned. It appears the trial court allowed for two days which defendants could have plowed and turned the vegetation upon the number of acres which he finds they could have plowed in the two days. After the engines arrived, and while at Wichita Falls, the railroad, through mistake, took the car in which the engines were loaded, and placed it in a train, and carried it to another point, and kept it out two days. The facts show that after the car came, and the arrangements were made by the defendants to take the engines, Lochridge and Tanner went to Wichita Falls to get the engines, which were then on board the car at that place, ready for unloading. Lochridge at that time refused to pay for but one engine, and Tanner, under direction of the bank, refused to deliver the bill of lading until the draft was paid. The next day Lochridge and Denny returned and paid the draft, procured the bill of lading, and paid the freight, but when they went to get the car for unloading they found it was gone, as above stated.

Under this last contract there could be no contention that there was an agreement to deliver the two engines at that particular time, when defendants paid for the engines by paying the draft, and procured the bill of lading, they were then the owners of the engines. They accepted them on board the cars, and as such they became the consignees. Whatever damage resulted to the property of

defendants by the negligence of the railroad belonged to the defendants, and the railroad alone was responsible to them therefor. There was no breach of contract to deliver at that time by plaintiff. The defendants then accepted the engines on board the car; there was no contract to deliver the engines anywhere, except on the car. The engines were bought and paid for on the car, and the bill of lading effectually transferred the title. In fact, in the original order the defendants agreed to receive the engines on cars on arrival. This they did when they received the bill of lading and paid the draft under the new arrangement. The plaintiff was not responsible for the conduct of the railroad, and, the title being in the defendants, they alone could sue the road, while the plaintiff could not, after the defendants became the consignee of the property.

[7] The bill of lading, when assigned or transferred by the consignee, with the intention to pass the title to the goods, was a symbolical delivery of the goods themselves, wherever they may have been in transit. Railway Co. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861. The goods were shipped upon a bill of lading with draft attached, and when the defendants paid the draft and took the bill of lading they became the purchasers thereof, and the sale was executed. The duty was then on them to see that there was no delay in unloading the car. Landa v. Lattin, 19 Tex. Civ. App. 246, 46 S. W. 48; National Bank v. Citizens' Bank, 41 Tex. Civ. App. 535, 93 S. W. 209; Chandler v. Fulton, 10 Tex. 2, 20, 60 Am. Dec. 188. The assignment of a straight bill of lading may be verbally made, as may any other chose in action. Cleveland v. Heidenheimer, 44 S. W. 551. The contract of sale having been consummated and delivery effected when the draft was paid and bill of lading delivered for the engines, and these acts being concurrent, there was no breach by plaintiff by reason of any delay, and hence no damages were occasioned by it. The delay having occurred after the delivery by the railroad, it alone was responsible.

We believe, under the facts in this case, the trial court was in error in rendering judgment for the defendants for any sum, and we therefore reverse and render the judgment of the trial court, ordering that the defendants take nothing by reason of their suit.