**FERGUSON–McKINNEY DRY GOODS CO. v. GARRETT.** (No. 399–3744.)

(Commission of Appeals of Texas, Section B. June 6, 1923.)

**1. Judgment ⚖️944—Plaintiff held to have made prima facie case that judgment recovered in Indian Territory was not dormant.**

In an action on a judgment rendered in Indian Territory, evidence of original judgment, also Act Cong. May 2, 1890, providing that Mansfield's Digest of Arkansas shall be in force in that territory until Congress enacts otherwise, and that actions on judgments shall be commenced within 10 years after the cause of action accrues, *held* to have made a prima facie case that judgment was not dormant in Indian Territory.

**2. Judgment ⚖️934(1)—Limitation of action on judgment recovered in Indian Territory governed by Mansfield's Digest.**

A judgment recovered in what was formerly Indian Territory is governed by the limitation laws of Arkansas in force in the territory when the judgment was rendered, namely, Mansf.

Dig. Ark. § 4487, providing that actions on judgments shall be commenced within 10 years after the cause of action accrues.

**3. Judgment ⚖️934(1)—Action on Oklahoma judgment held not barred by limitations.**

Where a judgment recovered in Indian Territory was still alive in Oklahoma by virtue of Mansf. Dig. Ark. § 4487, at the time action was commenced thereon in Texas before it was 10 years old, the judgment was not barred under Vernon's Sayles' Ann. Civ. St. 1914, art. 5691, where defendant debtor came within article 5691, by virtue of his residence in this state more than 10 years preceding the filing of the action.

**4. Evidence ⚖️43(4)—Texas courts do not take judicial notice of decisions of Oklahoma Supreme Court.**

Texas courts will not take judicial notice of decisions of the Supreme Court of Oklahoma.

**5. Corporations ⚖️691—Evidence held not sufficient to authorize conclusion as matter of law that foreign corporation was dissolved within contemplation of law.**

Evidence as to the dissolution of a foreign corporation *held* not sufficient to authorize the court, as a matter of law, to say there was a dissolution of original plaintiff corporation within contemplation of law.

**6. Abatement and revival ⚖️39—New corporation as assignee of dissolved corporation held to have right to continue prosecution of suit in name of old corporation or be substituted as plaintiff.**

Where a corporation before dissolution assigned its cause of action, then pending, to a new corporation, the latter had a right, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1206, to continue to prosecute the suit in the name of the old corporation or be substituted as party plaintiff, where no hiatus existed, and the new corporation, as assignee, was not even a necessary party; the rule being different in the absence of statute.

**7. Corporations ⚖️691—Right of dissolved Missouri corporation to prosecute pending action in old name decided by Missouri law.**

Where, pending a cause of action, plaintiff, a Missouri corporation, was dissolved, the question as to its rights to continue to prosecute the suit in its old name should be decided under the Missouri law.

**8. Evidence ⚖️80(1)—Presumed that Missouri laws same as Texas laws in absence of showing to contrary.**

With respect to the right of a dissolved Missouri corporation to continue to prosecute a pending suit in its old name, it will be presumed in a trial in Texas, in the absence of a showing to the contrary, that the Missouri laws are the same as the laws of Texas (Vernon's Sayles' Ann. Civ. St. 1914, art. 1206).

**9. Corporations ⚖️428(7)—President of corporation is charged with knowledge of suit by corporation.**

By virtue of his official position the law charges the president of a corporation with

knowledge of the pendency of a suit by the corporation in another state.

**10. Accord and satisfaction ⊕⇒8(1)—Compromise and settlement ⊕⇒6(3)—Agreement of creditor to accept principal only as to which suit was pending held compromise of an existing suit and supported by consideration.**

If a creditor of a $3,500 claim agreed to accept the principal only, amounting to $1,479,-14, in full settlement of the claim as to which an action was pending for several years, held, that the settlement was a compromise of an existing suit and supported by a sufficient consideration to make it valid, where there was some basis for the debtor's belief that his defenses were good.

**11. Accord and satisfaction ⊕⇒27—Compromise and settlement ⊕⇒24—Whether debtor agreed to pay creditor all of principal, or only part thereof, held for jury.**

Whether defendant debtor in a compromise settlement of an existing suit agreed to pay plaintiff creditor $1,000 or $1,479.14 in full satisfaction of a judgment held under the evidence a question for the jury.

**12. Accord and satisfaction ⊕⇒19—Compromise and settlement ⊕⇒20(1)—Accord must be executed to constitute bar to action unless promise instead of performance was accepted in satisfaction.**

To constitute a bar to an action on the original claim or demand, the accord must be fully executed, unless the agreement, instead of performance thereof, was accepted in satisfaction.

**13. Accord and satisfaction ⊕⇒18—Compromise and settlement ⊕⇒20(1)—Failure to pay total amount agreed breaches accord agreement.**

If defendant debtor agreed in settlement of an existing suit based on a judgment to pay plaintiff creditor $1,479.14, but paid only $1,-000, defendant breached the agreement or accord because it was not fully executed; such a partial execution of accord not ordinarily meeting the requirements of satisfaction.

**14. Accord and satisfaction ⊕⇒27—Compromise and settlement ⊕⇒24—Whether creditor accepted debtor's mere promise to pay or looked to performance of promise held for jury.**

If defendant debtor agreed to pay plaintiff creditor $1,479.14 in settlement of an existing claim, whether plaintiff accepted the mere promise of such payment, or looked to the performance of the promise, held under the evidence a question for the jury.

**15. Accord and satisfaction ⊕⇒19—Compromise and settlement ⊕⇒20(1)—When old judgment could and could not serve as basis for claiming original demand, stated.**

If a creditor in an accord and satisfaction agreement with his debtor looked to the performance of the promised payment in settling an old judgment and there was a failure of such performance, then the creditor would not be barred from a recovery of the balance owing on the old judgment; but if plaintiff accepted the mere promise of payment, instead of the performance thereof, then the old judgment was dead forever and the extent of plaintiff's recovery would be the total of the amount agreed to be paid in such settlement.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Ferguson-McKinney Dry Goods Company against Joseph E. Garrett. From a judgment for defendant, plaintiff appealed to the Court of Civil Appeals, which affirmed the judgment (235 S. W. 245), and plaintiff brings error. Reversed and remanded for new trial.

H. R. Sutherland and Kleberg, Stayton & North, all of Corpus Christi, and O. W. Patchell, of Pauls Valley, Okl., for plaintiff in error.

G. R. Scott, Boone & Pope, of Corpus Christi, for defendant in error.

POWELL, J. During the year 1901, Joseph E. Garrett was a retail merchant in a small town in Indian Territory. He became indebted to the Ferguson-McKinney Dry Goods Company, wholesalers of St. Louis, Mo., a corporation, owing it the principal sum of $1,479.14 on November 18, 1901. Being indebted to other concerns also, Garrett went into bankruptcy. He abandoned his efforts to secure a discharge in the bankrupt court. Plaintiff in error filed suit on its aforesaid claim in the United States District Court at Pauls Valley in Indian Territory and recovered judgment there on December 3, 1903, for $1,660.33, with 6 per cent. interest from that date, and costs of court.

The judgment was revived in the district court of Garvin county, Okl., on September 12, 1913, upon the theory that it had become dormant under the Oklahoma laws on November 16, 1912.

The judgment was not collected, and on November 20, 1913, plaintiff in error instituted its suit in the district court of Nueces county, Tex., against Garrett to recover on aforesaid original judgment and revived judgment. It was alleged that the original judgment was not dormant and that it was effective, as well as the revived judgment.

Although the case at bar was filed late in November, 1913, it was not actually tried until February 7, 1921, when a trial before a jury was had. Counsel for Garrett asked a peremptory instruction which was given. Upon the instructed verdict the district court entered a judgment in favor of Garrett.

Upon appeal to the Court of Civil Appeals at San Antonio, that court affirmed the judgment of the district court. See 235 S. W. 245.

The dry goods company, upon proper application therefor, obtained a writ of error from the Supreme Court.

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The nature of the defenses urged by Garrett, and the position of the plaintiff company with reference thereto, will now be considered in their turn.

Counsel for Garrett contend that he was entitled to a peremptory instruction upon any one of three grounds. In the first place, it is asserted that the revivor proceedings were invalid because of failure to obtain legal service upon Garrett; that, since the judgment was not properly revived, the *original* judgment was still dormant; that being dormant under the laws of the forum in Oklahoma, the original judgment was incapable of being enforced in the courts of Texas.

The Court of Civil Appeals sustained the contentions just above set out. We think it correctly held that the revivor proceedings were *not* binding upon Garrett. But the Court of Civil Appeals seems to overlook entirely the contention of counsel for the dry goods company to the effect that it was not depending upon the revivor proceedings, but upon the original judgment only; that the revivor proceedings had been taken when they were not necessary and were mere surplusage. The record shows that the attorneys for plaintiff in error expressly abandoned any effort to claim under said revivor proceedings. So, we come to consider whether or not the *original* judgment was dormant under the law of the forum where rendered when the suit was filed in Texas.

[1] Counsel for the company, without any objection from opposing counsel, introduced in evidence the original judgment entered in the United States court aforesaid; also an Act of Congress of May 2, 1890 (26 Stat. 81), defining the boundaries of the Indian Territory and conferring jurisdiction upon the courts there and specifically enacting that Mansfield's Digest of the Laws of Arkansas, hereinafter referred to, should be in force in that territory *until Congress should enact otherwise;* then, further, various provisions of these laws of Arkansas, among which was section 4487, providing that—

"Actions on all judgments and decrees shall be commenced within ten years after the cause of action shall accrue, and not afterwards."

Counsel for Garrett introduced nothing in evidence to show that the Arkansas laws aforesaid were not still in force so far as this judgment is concerned. We think, in the absence of all controverting testimony, the company made out a prima facie case that this judgment was not dormant in the forum in Indian Territory where it was rendered and obtained.

Upon appeal, counsel for the company show conclusively that the laws of Arkansas do *still* govern the judgment in suit, for they cite several decisions of the Supreme Court of the present state of Oklahoma which are exactly in point.

Certainly, no court is better qualified to speak upon this question than the Supreme Court of Oklahoma. Under the rules laid down by that court, the original judgment in controversy was not dormant. In the case of Davis v. Foley, 60 Okl. 87, 159 Pac. 646, L. R. A. 1917A, 187, that court held:

"On September 9, 1901, C. E. Foley obtained judgment against Samuel C. Davis in the United States District Court for the Northern District of the Indian Territory, sitting at Muskogee, Okl. On June 13, 1911, Foley commenced an action against Davis, on said judgment in the district court of Tulsa county, Okl. The defendant demurred to the petition which was overruled, and then pleaded the statute of limitation. The cause was submitted to the court upon the pleadings and judgment given for plaintiff, from which judgment defendant appeals.

"But two questions are raised upon the appeal: First. Could the plaintiff maintain an action on his judgment during the time that he had the right to issue an execution thereon? Second. Was the statute of limitation of Oklahoma, extended in force at statehood over the whole state, comprising in part what was originally Indian Territory, a bar to plaintiff's cause of action, or is the same governed by that portion of Mansfield's Digest of the Laws of Arkansas in force in the Indian Territory at the time the judgment was recovered?"

The court then answered the first question in the affirmative and proceeded as follows:

"The second proposition as to the application of the statute of limitation is clearly determined by Patterson v. Rousney, No. 4233, 159 Pac. 636, recently decided upon rehearing, and not yet reported. In that case it was said:

"'Where a promissory note, executed and payable in the Indian Territory, was subjected to the running of the statute of limitation as contained in section 4483, Mansfield's Digest, Statutes of Arkansas, for a period of time prior to the erection of the state, an action was instituted thereon after the admission of the state into the Union in the courts of this state. Held that the cause of action on said note was governed, as to the length of time necessary to constitute a bar thereto, by section 4483, Mansfield's Digest, and not by the laws of Oklahoma Territory extended over the state by the Constitution.'

"The section of Mansfield's Digest in force in the Indian Territory applicable to the present case is section 4487, which reads as follows:

"'Actions on all judgments and decrees shall be commenced within ten years after the cause of action shall accrue, and not afterwards.'

"It is apparent, therefore, that this being the controlling statute of limitation under the doctrine of Patterson v. Rousney, supra, the plaintiff brought his action within time, and the court properly rendered judgment for him."

Equally strong and to the point are the opinions of that same court in the cases of Patterson v. Rousney, 58 Okl. 185, 159 Pac. 636, and Maine v. Edmonds, 58 Okl. 645, 160 Pac. 483.

[2-4] It is quite clear that the Supreme

Court of the present state of Oklahoma holds that judgments recovered in what was formerly Indian Territory are governed by the limitation laws of Arkansas in force in the Indian Territory. Under those laws, the judgment in question was still alive in Oklahoma when the suit was instituted in Corpus Christi, Tex., a few days before the judgment was 10 years old. Not only so, but being instituted in Texas before it was 10 years of age, the action was not barred under the statutes of Texas. See article 5691, Vernon's Sayles' Revised Civil Statutes of Texas of 1914. Garrett had resided in Texas more than 10 years preceding the filing of this suit at Corpus Christi and was within the Texas statute just cited.

In view of another trial, however, we deem it proper to say that our courts, in deciding a case like the one at bar, will not take judicial notice of aforesaid decisions of the Supreme Court of Oklahoma. Upon another trial, counsel will have an opportunity to introduce in evidence such decisions as they think sustain their theories of the law they are urging.

We think the judgment was not shown to be dormant and that the action on it was not barred by any statute of limitation; that the defendant in error was not entitled to a peremptory instruction on that ground.

But it is contended by counsel for Garrett, in the second place, that the Ferguson-McKinney Dry Goods Company, a corporation, original plaintiff, was dissolved late in January, 1916, during the pendency of the case at bar; that the dissolution of said corporation *abated* the suit at that very time; that, when the Ferguson-McKinney Manufacturing Company, the successor corporation to the original plaintiff, filed a supplemental petition in 1921, five years later, asking to be substituted as plaintiff, as assignee of the original plaintiff, a new case was being filed and same was barred by the limitation laws. The district court overruled the demurrers and exceptions to this new pleading and permitted the new company to become plaintiff. The Court of Civil Appeals did not discuss this question in its opinion.

[5] The facts, in this connection, are: There was a slight change in the name of this corporation; the words "Dry Goods" being replaced by the word "Manufacturing." The evidence is not very full, and while the lay witnesses speak of a *dissolution*, it is not shown whether they used the word in a *legal* sense or not. At any rate, the assets were transferred to the new concern and practically the same parties remained in charge thereof. We are not prepared to say the evidence in this case was sufficient to authorize a court, as a matter of law, to say that there was a *dissolution* of the original company plaintiff, within the contemplation of law. If not, then certainly the suit was not abated and closed in 1916. In this connection, it is interesting to note that Garrett himself, in 1919, even after noticing the change in the company's name, insisted on having a certain receipt executed in the company's old name. The names seem to have been used interchangeably, so far as *this suit* was concerned, and we think correctly so. In other words, we think the suit could have been prosecuted in either name.

In 1921, counsel for the company suggested the change in name of the plaintiff and the new ownership, alleging that they understood the case could continue to be prosecuted in either name, and offering to do as the court might direct or prefer. This offer was made in two different pleadings. The court permitted the substitution, as already stated.

[6, 7] But, even if there had been a *dissolution, legally* speaking, of the original plaintiff company, in 1916, we do not think there was any *abatement* of the pending cause. Therefore no new question of limitation arose. The evidence shows that the old corporation, before the dissolution, assigned the cause of action to the new company, and the latter had a right to continue to prosecute the suit in the name of the old corporation or be substituted as party plaintiff. No hiatus existed. Assignee was not even a necessary party. See Lee v. Salinas, 15 Tex. 495; Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20; Trinity County Lumber Co. v. Holt (Tex. Civ. App.) 144 S. W. 1029; Bank of Alexandria v. Patton, 1 Rob. (40 Va.) 524.

In the case of Lee v. Salinas, supra, Chief Justice Hemphill says the general rule is that "a conveyance pending the suit should not be permitted to vary the rights of the parties."

In the case of Bailey v. Laws, supra, the court says: "A purchaser pendente lite need not be made a party to the record."

All the Texas cases cited above refer to private individuals rather than corporations. However, the Virginia case speaks of a dissolved corporation and is very much in point with the case at bar. In that case the court refused to abate a pending cause of action.

Counsel for Garrett take no issue with the rules laid down in the Texas cases above cited, but contend that a dissolved corporation cannot continue to prosecute a suit, but that the cause is abated and dies as a result of the dissolution of the corporation. There is no question but that, in the absence of statutes in various states, where a corporation plaintiff, still owning a claim, was dissolved, the pending cause covering such claim was abated.

The abatement of suits, however, resulting in a multiplicity of suits, has never been favored. For that reason, Texas early began to enact statutes covering succession in the prosecution of pending suits. Not only did the state provide for the continuance of suits where individual plaintiffs died, but where corporations, parties to suits, were dissolved.

The statutes with reference to the latter have constantly become more liberal, and article 1206 of Vernon's Sayles' Revised Civil Statutes of. Texas, aforesaid, enacted in 1907, provides that the president, directors, or managers of any dissolved corporation may, in the name of such corporation, maintain or defend judicial proceedings for certain purposes, including collection of existing debt.

There is no question but that, under the laws of Texas, the dissolution of the old corporation would not have abated the pending suit. The same could have been carried on as before. It is true, however, that the trial court should have tried the case under the Missouri law, as the corporation is alleged to have been dissolved in Missouri. The record does not disclose what statute Missouri has as to the rights of a dissolved corporation to continue to prosecute a pending suit in its old name. But, in the absence of any showing to the contrary, it will be presumed in a trial in Texas that these Missouri laws are the same as the Texas laws above set out. See American National Bank v. Garland (Tex. Com. App.) 235 S. W. 562; Walker v. Garland (Tex. Com. App.) 235 S. W. 1078. ,

In the case of Bank v. Garland, supra, Judge Hamilton, speaking for this section of the Commission of Appeals, said:

"Since there was neither pleading nor proof, upon the trial of the case, that the laws of Oklahoma gave any effect to the judgment sued upon in this case different from that which the laws of this state give to it, that judgment must be construed according to the laws of Texas. If plaintiff in error had proved that the judgment had any force and effect in Oklahoma other than that which such a judgment has in Texas, it would have been entitled in the courts of this state to whatever force and effect might have been so proved."

We do not think counsel for Garrett produced any such record on the former trial of this case as to warrant a peremptory instruction because of the change in the corporate name of the original plaintiff, as just set out.

This brings us to the third ground asserted by Garrett as justifying the peremptory instruction, and that is an alleged settlement arranged by the litigants themselves.

[8-10] About the middle of July, 1919, almost six years after the case at bar was filed, Garrett, on his way east, stopped off in St. Louis for a conference with his creditors. A settlement was made by Garrett and President Ferguson of plaintiff company. But there are at least two wide variances in the evidence as to just what was done and said during these negotiations.

According to Garrett, he told Ferguson he had managed to make some money in Texas and wanted to settle that old lawsuit in Corpus Christi, involving an old account he had owed the company for a long time; that he could not pay any cash, but would give a note for $1,000 due about 90 days hence, in full settlement of the claim and suit. Garrett further testified that this proposition was accepted by Ferguson, and he thereupon gave a new note to the company for $1,000 due in October following; that the company, in accepting the note, gave him a release in full, as follows:

"St. Louis, 1201 Washington Ave.,
"July 16th, 1919.

"Mr. J. E. Garrett of Corpus Christi, Texas, has paid his account in full to date with the Ferguson-McKinney Dry Goods Co.'
"Ferguson-McKinney D. G. Co.,
"A. C. Wiggs."

On the other hand, Ferguson testified that no lawsuit of any kind was mentioned; that he knew nothing of the Texas case at the time; that Garrett did come in and tell him he had made some money in Texas and was desirous of paying up his old debts, including the one due his company at St. Louis; that he would pay the principal of this debt, which was something like $1,500; that he would give a note for $1,000 and pay the balance in cash. Ferguson testified further that he agreed to accept this amount and waive all interest which had accrued over the long period of years since 1901; that he agreed to go through the old books and see what the exact amount of the account was and that settlement would be concluded upon that basis that afternoon; that he told his credit manager of the settlement agreed upon and asked him to ascertain the exact amount due and close the matter when Garrett returned that afternoon.

The credit manager did not succeed in locating the old account by the time Garrett came back to the office, and he testified that the latter told him the cash payment would be sent in by him as soon as he could reach Corpus Christi and go through his old books and see just what it was; that, relying upon that promise as to the cash payment, and the performance thereof, he accepted the note aforesaid and executed the receipt above described, delivering the latter to Garrett. It will be observed that the receipt does not specify the details of payment, as to whether or not it had been all cash, or part cash and part note. It was incomplete in that respect.

It will be observed that there is a direct conflict in the testimony as to whether or not the settlement was in compromise of this lawsuit, and as to whether the amount to be paid was $1,000 or the entire *principal* due on the old account.

At the time of the trial of the case at bar, the entire amount due on the old judgment, including interest, was about $3,500. It is contended by counsel for the company that the agreement by the latter to accept the lesser sum of $1,479.14 was without consideration, and not a contract binding in law;

that the $1,000 payment, the note having been paid at maturity, should be applied as a credit on the entire amount due; that, under the facts of this case, this court should here *render* judgment for some $2,500 in favor of plaintiff in error.

Did the agreement to accept above lesser sum in full payment of a larger debt bind the company? Its counsel says not, and cite the following rule laid down by Corpus Juris, vol. 1, p. 539:

"Where the debt or demand is liquidated or certain and is due, payment by the debtor and receipt by the creditor of a less sum is not a satisfaction thereof, although the creditor agrees to accept it as such, if there be no release under seal, or no new consideration given. Payment of a less amount than is due operates only as a discharge of the amount paid, leaving the balance still due, and the creditor may sue therefor notwithstanding the agreement."

As we understand it, counsel for Garrett take no issue with aforesaid rule, nor does the Court of Civil Appeals. The latter quotes approvingly from the decision of the Supreme Court of Pennsylvania in the case of Melroy v. Kemmerer, 218 Pa. 381, 67 Atl. 699, 11 L. R. A. (N. S.) 1019, 120 Am. St. Rep. 888, which decision states that many exceptions to this general rule are being recognized. The Court of Civil Appeals, in the instant case, decided that the undisputed facts in the record showed sufficient new consideration to make this settlement a binding contract. In this finding we think the Court of Civil Appeals is correct. Although President Ferguson denied actual knowledge of the suit in Texas, the law charges him with knowledge thereof by virtue of his official position. The agreed settlement was in full of the account which was the basis of this lawsuit; therefore, the settlement was a compromise of an existing lawsuit which had been brought by the company and allowed to drag for years. The record shows that Garrett actively contested the case from the beginning, alleging the invalidity of the judgment, and other defenses. He was making a vigorous fight on this judgment and the record reflects nothing showing any lack of good faith on his part in having his counsel urge such defenses. That there was some basis for his belief that his defenses were good is apparent since the record shows that the district court and Court of Civil Appeals sustained his contentions. Under the rulings of those courts, the company would have recovered nothing. Under the settlement a substantial sum was realized. The facts in evidence here show a new consideration sufficient to make the settlement binding if fully executed.

[11-13] This brings us to a discussion of a leading fact issue. Did Garrett agree to pay $1,000 or $1,479.14 in full satisfaction of this judgment? There was a direct conflict in the testimony on this point. Surely it was an issue the jury should have been permitted to decide. If the jury found that Garrett agreed to pay only the $1,000 note, then the trial court should have entered judgment for the defendant. He paid that note at maturity.

On the other hand, if the jury found that he agreed to pay the larger sum in settlement, then the company should, in any event, have judgment for $479.14 with interest from the date of its promised payment. We do not think the company should be cut off from this relief, to say the least of it.

As we see it, the right of recovery mentioned in the next preceding paragraph will be the extent of the company's recovery, even though the jury find that Garrett agreed to pay $1,479.14 rather than $1,000 in full settlement, unless the failure of Garrett to pay the former amount in full was such a failure of full execution of the accord as to entitle the company to continue its action on the *original judgment*. If Garrett agreed to pay the larger sum, he breached his agreement or accord. It was not *fully executed*, and ordinarily such a partial execution of the *accord* does not meet the requirements of *satisfaction*.

The law in this connection has been stated by Corpus Juris, vol. 1, p. 530, as follows:

"To constitute a bar to an action on the original claim or demand the accord must be fully executed, unless the agreement or promise, instead of the performance thereof, is accepted in satisfaction."

The author of above text cites in support thereof the following Texas cases: Miller v. Dallas Consol. Electric St. R. Co., 104 Tex. 57, 133 S. W. 866, 868 (cit Cyc); Gulf, etc., R. Co. v. Harriett, 80 Tex. 73, 15 S. W. 556; Gulf, etc., R. Co. v. Gordon, 70 Tex. 80, 7 S. W. 695; Overton v. Conner, 50 Tex. 113; McGehee v. Shafer, 15 Tex. 198; Autrey v. Cannon, 11 Tex. 110; Southern Nat. Bank v. Curtis (Tex. Civ. App.) 36 S. W. 911.

In the case of Overton v. Conner, 50 Tex. 113, Chief Justice Moore says:

"Certainly no one can insist that a mere promise, without performance, unless it had been expressly so agreed, will satisfy or discharge a pre-existing contract."

Again, as showing that the rule in Texas is as laid down in Corpus Juris, we quote as follows from the opinion by Chief Justice Gaines for the Supreme Court of Texas in case of Ry. Co. v. Harriett, 80 Tex. 73, 15 S. W. 556:

"We think the court erred in giving the former and in refusing the latter instruction. The law bearing upon this issue is very clearly stated in Chitty on Contracts: 'Upon the whole true distinction would seem to be between the cases in which the plaintiff has agreed to accept the promise of the defendant in satisfaction and those in which he has agreed to accept the performance of such promise in satisfaction; the rule being that in the latter case there shall be no satisfaction without per-

formance, while in the former, if the promise be not performed, the plaintiff's only remedy is by action for the breach thereof, and he has no right to recur to the original demand.' 2 Chitty on Con., 11 Am. Ed. 1124."

Counsel for Garrett rely upon the Harriett Case and contend that the *facts* in the case at bar show that the company accepted the *promise* of payment and not the *performance* of that promise. In the Harriett Case, plaintiff had been injured by the railway company in a wreck. He agreed upon a settlement at $2,500. The record contained proof showing that the voucher was issued immediately and tendered to Harriett; that it was ready for him continuously thereafter; that Harriett agreed to call for the voucher when he needed the money; that he had accepted the *mere promise* of this payment and abandoned, at the very time the promise of payment was made, his original claim for damages. Later, however, he sued on the original demand for damages, and in spite of the evidence above outlined, the trial court charged the jury as follows:

"In addition to requested instructions given you in this case, you are further instructed that in order to make out a defense of accord and satisfaction it must be shown that the agreement to accept something in satisfaction of the liability incurred has been fully executed, and that the thing to be taken has been accepted and received. There being no proof in this case showing satisfaction, by defendant paying and the plaintiff receiving anything, whereby defendant was relieved of liability, if any liability was incurred, you will not give attention to that feature of the case."

The trial court refused to give to the jury the following charge tendered by the railway company:

"If you believe from the evidence that on or about the 30th day of August, 1888, the plaintiff agreed with the defendant upon a compromise of his claim for damages sued on in this cause for the sum of $2,500, and that an agent of the defendant, then and there authorized to do so, then and there promised to pay the plaintiff said sum of $2,500, or promised and agreed that defendant through its treasurer would pay plaintiff said sum of money, and that he was authorized by defendant to make such promise, and that the plaintiff then and there accepted said promise and agreement in satisfaction and discharge of his original cause of action on account of his injuries, and that he then agreed and expected to look to and demand of defendant said sum of $2,500 under said promise and agreement, and not to demand of defendant damages on account of his original cause of action as it rested before such promise and agreement was made, then you will find a verdict for defendant."

As already shown, Chief Justice Gaines held that the district court erred in giving the first charge quoted above and in refusing the latter one. He went on to state that none of the attorneys controverted the prop-

osition of law he quoted from Chitty on Contracts.

[14] In the case at bar, if it was the intention of the parties that the old judgment was entirely abandoned on the mere promise of Garrett to pay $1,479.14, then the old judgment was dead forever and no further rights thereon could be had. On the other hand, if it was the intention of the parties that the old judgment would be considered settled upon the performance of the promise to pay $1,479.14, and not until that amount had actually been paid, then, there being no performance as agreed, if so agreed, the company would not be barred from continuing its action on the *original demand*. There is proof in the record that the company made this settlement relying upon the *payment* of this additional $479.14 in cash just as soon as Garrett could return to Corpus Christi and ascertain the exact amount due from an inspection of his old mercantile books. Therefore, if the jury had found that Garrett agreed to pay $1,479.14 in that settlement, the facts in evidence in connection with that settlement were such as to demand a submission to the jury as to whether the company accepted the mere promise of such payment or looked to the performance of such promised payment. In this case this was a fact question for the jury and the Court of Civil Appeals does not deny it. That court is silent upon this point, but does lay down the law in that connection as follows:

"When parties agree that the promise shall be in satisfaction of the prior debt or duty, and it is accepted in satisfaction, then it operates as such, and bars the action on the old debt or duty. As to whether it has been accepted as such must be ascertained from the intention of the parties, and in case of dispute must be determined by the jury."

[15] If the jury should find, upon another trial, that the company looked to the performance of the promised payment in settling this old judgment, and that there was a failure of such performance, then the company will not be barred from a recovery of the balance due on the old judgment. On the other hand, if the jury finds that the company accepted the mere promise of payment in that connection, then the extent of its recovery would be the total of the amount agreed to be paid in such settlement, whatever the jury finds that amount to be.

A reading of the entire record discloses that Garrett confessedly owed this company a principal debt of about $1,500, and tried to settle it. The record further tends to show that the dispute over this item of $479.14 is the cause of the continuance of this litigation. If there had been no disagreement about this item, the case doubtless would have been dismissed. The misunderstanding has left the lawsuit with us, and we think the case must be remanded

so that the jury can pass upon aforesaid fact questions and thereby enable the courts to enter a judgment in accordance with law.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent with the views herein expressed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.