Marion PRIEM, et ux., Appellants,

v.

Paul L. SHIRES, Individually and d/b/a Shires and Hope Custom Builders, Appellee.

Paul L. SHIRES, Individually and d/b/a Shires and Hope Custom Builders, Appellant,

v.

Marion PRIEM, et ux., Appellees.

Nos. 14402, 14436.

Court of Appeals of Texas, Austin.

Oct. 2, 1985.

Jeff Blackwelder, McMurtry, Ewald & Blackwelder, Austin, for Priem.

Mark S. Levbarg, Levbarg & McGowan, Austin, for Shires.

Before POWERS, EARL W. SMITH and BRADY, JJ.

POWERS, Justice.

Marion Priem, joined by his wife, sued Paul L. Shires for money damages. Shires, in turn, sued the Priems by way of counter-claim. After a jury trial, the trial court disregarded the jury's answers to special issues and rendered judgment that the parties take nothing by their respective suits. We will affirm the trial-court judgment. We will refer to the Priems as "Priem" and to Shires by name.

Priem alleged that Shires had failed to complete in a good and workmanlike manner his construction of Priem's residence. Contending that such failure amounted to the "breach of an ... implied warranty,"

Priem prayed for recovery on the statutory cause of action authorized by § 17.50(a)(2) of Tex.Bus. & Com.Code Ann. (Supp.1985), a section of the Deceptive Trade Practices—Consumer Protection Act. In the course of the suit, the parties composed their differences in a contract dated July 1, 1983, entitled "Mutual Release of All Claims." The contract contemplated remedial work on the Priem residence. The work was not done and Priem pressed anew his statutory cause of action. Shires counterclaimed, alleging the statutory cause of action (for court costs and attorney's fees) authorized by § 17.50(c) for consumer actions brought in bad faith or for the purpose of harassment. From the trial court's take-nothing judgment, both parties appeal, contending they were entitled to judgment on the jury's answers to special issues.[1]

The determinative issue is whether the parties' contract of July, 1983 constituted a *novation,* with the legal effect of extinguishing or discharging their respective statutory causes of action under § 17.50. We believe it had such effect with respect to any past or future statutory causes of action arising out of the construction controversy.

There is no jury finding or conclusion of law that would deprive the contract of legal effect; indeed, the contract has never been assailed as to its validity, whether in the trial court or on appeal, and each party urges its validity as a defense or ground of recovery. The material parts of the contract are set out in a footnote.[2]

1. The effect of the jury's verdict was as follows:
 1. None of three statements made by Shires constituted a false, misleading, or deceptive act or practice that was a producing cause of a reasonable necessity for any repairs to the residence.
 2. After Shires last worked on the residence, repairs were reasonably necessary to complete the residence in a good and workmanlike manner.
 3. The residence was not unsuitable for human habitation.
 4. The reasonable and necessary cost of the repairs found to be necessary in special issue 2 above was $3,000 in October 1983.
 5. There was no increase in such reasonable and necessary cost between October 1983 and the time of trial.

 \* \* \* \* \* \*

 8. After Shires last worked on the residence, he was not actually aware that repairs were reasonably necessary to complete the residence in a good and workmanlike manner.

 \* \* . \* \* \* \*

 10. Shires was ready, willing, and able to complete the residence in a good and workmanlike manner after the agreement in July 1983.
 11. The Priems did not bring their suit in bad faith or for the purpose of harassment.
 12. After the agreement in July 1983, the Priems acted in bad faith or for the purpose of harassment when they continued to prosecute their suit.

2. In its material parts, the contract provides as follows:
 1. The Priems claim that their residence was not constructed in a good and workmanlike manner, causing them "monetary damage"; Shires asserts that he has not been fully paid for the construction completed by him; and that bona fide disputes and controversies exist between the parties, both as to liability and the amount of damages, if any, "and by reason of such disputes and controversies and in the interest of harmony and accord, and to avoid the expense and hazards of further litigation, the parties have agreed to compromise and settle all claims and causes of action of any kind whatsoever according to the following terms and conditions";
 2. "[F]or and in consideration of the *mutual promises* and covenants hereinafter contained," each party "releases, acquits, and *forever discharges* the other ... from any and all claims or causes of action of any kind whatsoever, at common law, *statutory* or otherwise, which the parties might have ... directly or indirectly attributable to the above described transaction, it being intended to release all claims of any kind which the parties might have against those hereby released, whether asserted in the above styled and referenced cause or not." (emphasis added)
 3. Shires will provide at his expense the necessary labor and materials to correct, repair or replace 15 specified defects in the residence; and, will "remain responsible for foundation and structural integrity of" the residence for a period of six months after the work is completed. An individual named "H.L. Weiss" will supervise the work and select the materials, being paid by Shires, who shall not participate in the work. Any damage occurring during the work will be paid for by Shires. Work will commence within 30 days of the agreement and be completed within 30 days after it begins.
 4. The Priems will deposit $1,500 with a disinterested party within three days of the execution of the agreement, which shall be paid over to Shires on completion of the work.

■ Whether their contract be one of settlement and compromise *or* one of accord and satisfaction, disputing parties may in lieu of performance itself agree that a *promise* of performance shall constitute satisfaction of an original claim or right of action.[3] That is to say, their contract may evidence an intention to relinquish and ex-

5. The Priems and Shires will bear the court costs and attorney's fees incurred by them.

6. The contract agreements are made "to compromise doubtful and disputed claims, avoid litigation, and buy peace," without admitting liability in any respect. ·

7. Following completion of the work described above, the Priems will present to the court an agreed order dismissing the cause in all respects and with prejudice to their right to refile their suit or any part of it.

8. The parties understand the contract to be one of settlement and compromise and a "release of all claims ... that they have ... against each other arising out of the matters described."

**3.** We believe it necessary to define some of the terms used herein and by the parties in their briefs.

*Settlement and compromise* refers to the conclusion of a disputed or unliquidated claim, and attendant differences between the parties, through a contract in which they agree to mutual concessions in order to avoid resolving their controversy through a course of litigation. *See Alexander v. Handley,* 123 S.W.2d 379 (Tex.Civ. App.1938) aff'd, 136 Tex. 110, 146 S.W.2d 740 (1941); 15 Am.Jur.2d, Compromise and Settlement §§ 1, 2, pp. 773–75 (1976). Essential to such a contract is a *disputed* or *unliquidated* claim. A claim that is liquidated and undisputed cannot form the basis of a contract of settlement and compromise, and this is the essential difference between such a contract and one of accord and satisfaction. 15 Am.Jur.2d, *supra.* An agreement of settlement and compromise may constitute an accord and satisfaction, or it may not, depending upon the terms of the parties' contract.

*Accord and satisfaction* refers to an agreement between parties, one of whom has a right of action against the other, wherein the former shall accept some performance by the latter in satisfaction of the right of action. The right of action may consist in a claim that is either liquidated or unliquidated, disputed or undis-·puted. The performance so accepted by the holder of the right of action must be *different* from that which might be legally enforced. The word "accord" refers to the *agreement;* the word "satisfaction" refers to the *performance* of the agreement, given and accepted in lieu of the right of action. *See Slaughter v. Temple Lumber Co.,* 307 S.W.2d 108 (Tex.Civ.App.1957, writ ref'd n.r.e.); Note, "Accord and Satisfaction—Part Payment of a Liquidated Claim," 6 Tex.L. Rev. 377 (1928); note, "Accord and Satisfaction—Consequences of Accepting a Check Marked 'Paid in Full'," 16 Tex.L.Rev. 101 (1937).

*Payment* differs from accord and satisfaction in that the former discharges an obligation by reason of the obligor's performance of his obligation *according to its terms,* or what the law would require and what the obligee was bound to accept. *See Barcus v. J.I. Case Threshing Co.,* 197 S.W. 478 (Tex.Civ.App.1917, writ dism'd w.o.j.).

*Novation* refers to the discharge and resulting bar of an old obligation by reason of a contract wherein a new and inconsistent obligation is substituted by the parties with an intention of extinguishing and barring the old obligation. *Cooper Grocery Co. v. Strange,* 18 S.W.2d 609 (Tex.Comm.App.1929, jdgmt. adopted). The new obligation may involve either a substitution of obligation or a substitution of obligors or obligees. *Currie v. Trammell,* 289 S.W. 736 (Tex. Civ.App.1927, writ ref'd). A contract of settlement and compromise, or one of accord and satisfaction, may work a novation depending upon whether the parties intended to extinguish the old obligation by their contract, a question falling within the general law pertaining to the interpretation of contracts.

A contract of settlement and compromise, or one of accord and satisfaction, may be promissory with respect to a party's performance. In contracts of accord and satisfaction, so long as performance remains executory, there is, as a general rule, no "satisfaction" of the original right of action and it may be enforced as by bringing or pursuing a cause of action. *See* Comment, "Executory Accord, Accord and Satisfaction, and Novation—the Distinctions," 26 Baylor L.Rev. 185 (1974). In contracts of settlement and compromise, if the executory obligation is breached, the non-breaching party may elect to enforce either the contract of settlement and compromise or the original disputed or unliquidated claim, but he may not claim the benefit of the former and also sue on the latter. *Alexander v. Handley, supra; Groves v. Sawyer,* 384 S.W.2d 193 (Tex.Civ.App.1964, writ ref'd n.r. e.). In either case, however, if the parties' contract evidences an intention to extinguish and bar the original claim or right of action, by an acceptance of the *promise* of performance in lieu of performance itself, the contract is one of novation, discharging and barring the original obligation and only the new obligation may be enforced. *Ferguson-McKinney Dry Goods Co. v. Garrett,* 252 S.W. 738 (Tex.Comm.App.1923, holding approved). In such cases, the general rule, mentioned above, is inoperative.

*Release* refers to a conclusive acknowledgement of satisfaction by one to whom an obligation is owed. *State v. Tyler County State Bank,* 277 S.W. 625 (Tex.Comm.App.1925, holding approved).

tinguish pre-existing claims and rights of action, and effect a novation, even though some of the promises contained in their contract be executory. In such cases, they must recover on or for breach of the promises contained in the contract of novation. They may not recover on their pre-existing claims and rights of action, if there was, indeed, a novation. What then was the intention of the parties in the present case?

First, we think it beyond controversy that the contract was one of settlement and compromise of disputed claims. It may not be reasonably contended otherwise in light of the parties' express acknowledgment, in the instrument, that their claims against each other were unliquidated and disputed, that they made mutual concessions to avoid litigation about their respective claims, and that the contract was made for the very purpose of compromising doubtful and disputed claims so as to avoid litigation and buy peace without admitting liability. We think it also unquestionable that the agreement was one of accord and satisfaction *as well*, in that each party expressly agreed therein to perform something distinctly different from what might have been legally enforced against him in vindication of the right of action originally claimed by the other.

Thus, there arises the second issue: Did the parties intend by their contract of accord and satisfaction to extinguish any pre-existing rights of action and relinquish any pre-existing claims they may have had by reason of the underlying controversy about the construction work? In other words, did they intend that their contract would effect a novation of those antecedent claims and rights?

Priem contends that his obligation to present the agreed order only after completion of the work implies that he was empowered to accept, or not, the remedial work. And under the *general rule* applicable to contracts of accord and satisfaction, a novation arises only on the claimant's *satisfaction*—his acceptance of the performance promised in the *accord*. But this

general rule may, of course, be varied by the *particular* terms upon which the parties agree in their contract of accord and satisfaction. They may, for example, agree that mutual *promises shall* constitute a release of all antecedent rights of action and in such cases the general rule *does not* apply—there is a novation resulting from agreement of the parties, even though their contract is one of accord and satisfaction, as pointed out in a footnote.

We concede that Priem's obligation to present the agreed order only after completion of the work implies that he was empowered to accept, or not, the remedial work. But this does not preclude the possibility that the parties *also* intended a novation. We believe the contract, considered as a whole, clearly evidences an intention to accept mutual promises in satisfaction and discharge of any antecedent rights of action and claims. The parties could not, therefore, revive and press them anew, even in the statutory causes of action authorized by § 17.50 of the Act, unless they invalidated on some basis their contract of accord and satisfaction. This they did not attempt to do. They may therefore recover, one against the other, only on or for breach of their contract of accord and satisfaction.

We infer the parties' intention from the basic provisions of the contract and the language used by them: (1) the parties expressly acknowledged in the contract instrument that it is a "release of all claims" held by one against the other; (2) there is no language that suggests a future release and by definition the word "release" implies the *receipt* of satisfaction, which in the present case could *only* be obtained from a contract promise; (3) the contract instrument provides, moreover, that each party "releases, acquits, and forever *discharges* the other" for a *"consideration"* specifically described as "the mutual *promises* and *covenants*" expressed in the contract (emphasis added); and (4) there is in the contract instrument no expression to the effect that a party's future acceptance of the other's performance is necessary to

his "satisfaction," nor is the effect of any release and discharge made contingent on any other matter whatsoever.

We reject for several reasons the interpretation advanced by Priem. First, it would distort the meaning of the contract as a whole as that meaning is expressed in the basic provisions described in the preceding paragraph, for these would be contradicted if Priem had the power to press anew his original claims and rights of action. It would create ambiguities and give controlling effect to a single provision when that provision does not even mention the basic matter of claims and rights of action. For example, Shires' agreement to guarantee the foundation and structural integrity of the residence, for a period of six months *following completion of the remedial work*, is necessarily executory and was obviously intended by the parties to *remain so even after completion of the work*, that is to say, after the time when Priem was obligated to present the agreed order of dismissal if he were satisfied with such work. More importantly, Priem's interpretation would leave open to controversy the sufficiency of the *original* work, a hypothesis that totally contradicts and renders meaningless the parties' expressed intention to put to rest, for a single unitary consideration (mutual releases and discharges), *all* antecedent matters of controversy between them. We may not interpret the single provision in question to so distort and contradict the other express provisions and the whole tenor and effect of the parties' contract. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

We believe it far more reasonable to give effect to the plain words of the contract and the meaning those words imply so naturally in the clearest terms: by their contract the parties extinguished and relinquished all antecedent claims and rights of action while preserving in Priem the right to reject the sufficiency of the *remedial* work only, and sue on or for breach of the contract of accord and satisfaction if that work be unsatisfactory, amending his pleadings accordingly.

In summary then, we hold the trial court correctly rendered its judgment, the parties having agreed as a matter of law and contract construction to substitute the rights and obligations of the contract of July, 1983 for any original rights and obligations growing out of the construction work, discharging and extinguishing the latter. *They could therefore recover solely on or for breach of the contract of July 1983, that contract not having been invalidated for any reason.* The answers of the jury to special issues would not support a judgment based on that contract.[4] We therefore affirm the judgment below.

---

4. The effect of our interpretation of the parties' contract, which is evidently that reached by the trial court after the jury's verdict, is to render immaterial the individual answers of the jury to special issues. The parties' original statutory rights of action under the Deceptive Trade Practices Act being extinguished, as a matter of law and contract construction, any findings of the jury, essential to such statutory causes of action, became immaterial. Moreover, it would require a finding invalidating the contract of settlement and compromise before the verdict would be sufficient to support a judgment enforcing those rights of action, that is to say, enforcing the parties' statutory causes of action under the Act. There is no such finding and none was requested. In these circumstances, the jury's answers to the special issues were of no legal significance and the trial court was entitled to disregard *on its own initiative* the immaterial issues. 4 McDonald, Texas Civil Practice § 17.31, pp. 239–40 (1984).