Fingerlakes Construction Co., Inc. v. Fillmore Farms, LLC, No. 56-2-04 Bncv (Carroll, J., Aug. 3, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT
## BENNINGTON COUNTY, ss.

| | |
|---|---|
| **FINGERLAKES CONSTRUCTION COMPANY, INC.,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **BENNINGTON SUPERIOR COURT** |
| ) | **DOCKET NO. 56-2-04 Bncv** |
| **FILLMORE FARMS, LLC,** ) | |
| **THE E.H. HOLDEN** ) | |
| **CORPORATION and** ) | |
| **EDWARD HOLDEN,** ) | |
| **Defendants.** ) | |

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Fingerlakes Construction Company, Inc. ("Fingerlakes") moves for summary judgment on its claims seeking specific enforcement of an agreement between the parties. Fingerlakes also seeks judgment on the counterclaims of Defendants Fillmore Farms, LLC, the E.H. Holden Corporation, and Edward Holden (collectively "Fillmore"). For the reasons herein, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART**.

### STANDARD ON SUMMARY JUDGMENT

Summary Judgment under V.R.C.P. 56 is appropriate when there is "no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)

(3).  When reviewing a motion for summary judgment, the court will afford the non-moving party "all reasonable doubts and inferences" based upon the facts presented.  Samplid Enterprises, Inc. v. First Vermont Bank, 165 Vt. 22, 25 (1996) (citing Pierce v. Riggs, 149 Vt. 136, 139 (1987)).  In the event that the non-moving party opposes the moving party's motion, "[a]llegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

### BACKGROUND

In July of 1999, Fingerlakes entered into a construction contract other parties to construct a dairy barn.  The original contract price was $393,000.  The construction contract was signed by an individual named Robert T. Holden, who is not a named party in this lawsuit, and stated that the owner of the property was Holden Corporation.  At the time of the facility's substantial completion in 2000, Fingerlakes had been paid $216,000, leaving an unpaid balance on the original contract of $176,900.  As a result of delays and deficiencies in the project, the parties conducted extensive negotiations during 2000 and 2001 in an attempt to resolve their disagreements.

In October of 2001, Plaintiff and Edward Holden reached an agreement by which the remaining balance on the contract was to be reduced from $176,000 to $129,000, with an initial payment of $25,000, and following monthly payments of $1,261.81, to be paid in adjusted amounts over a period of ten years.[1]  The agreed-upon payment plan provided for interest at a

---

[1]Although there does not appear to be one written agreement containing both parties'

2

rate of eight percent annually. The October, 2001 agreement was signed by Edward H. Holden, as member and on behalf of Fillmore Farms, LLC.

By check dated November 10, 2001, Fillmore paid Fingerlakes the initial payment of $25,000. Between January 2002 and August 2002, Fillmore made eight payments of $1,261.81. After August of 2002, payment from Fillmore ceased and no further payments were made to Fingerlakes, leaving a balance owed of $99,344.64, plus interest beginning August 1, 2002. Fingerlakes seeks a judgment of $99,344.64 plus interest in this suit, pursuant to the October, 2001 agreement between the parties. Fingerlakes does not sue on the original contract, as indicated by its demand in the amount of the remaining balance of the October, 2001 agreement.

In its answer, Fillmore denied its liability and countersued Fingerlakes, alleging breach of the original contract's implied warranty of workmanship, consequential damages resulting therefrom, and gross negligence in the performance of the original contract. In their countersuit, Fillmore seeks damages of approximately $200,000.

Fingerlakes moves for summary judgment on its claims, and Fillmore's counterclaims, arguing that the October, 2001 agreement, made after the original contract, controls and that Fillmore is estopped from bringing a counterclaim on the original contract, as the October, 2001 agreement operated as an accord and satisfaction, which Fillmore subsequently breached.

## DISCUSSION

After reciting the agreed upon payment schedule, the October, 2001 agreement between the parties, drafted by Fillmore, states as follows:

---

signatures, the parties have represented in their pleadings that each has signed an identical agreement.

In summary, the total amount of the obligation is the $129,000.00. We will make a down payment of $25,000.00 and you will finance the balance of $104,000.00 at 8% interest for a term of 10 years. I am enclosing an amortization schedule, which shows the projected, and tentative bullet payments.

I would appreciate it if you would please sign and return one of the two originals and I will then forward to you the initial payment of $25,000.00.

After much effort from both of us, this agreement resolves in full the outstanding issues between our firms. Bob, on a personal level I would like to thank you for the integrity and fairness you have brought to help resolve this problem.

(Fingerlakes' Mot. for Summ. J., at Ex. C.)

Fingerlakes contends that the October, 2001 agreement is an accord and satisfaction, and in its answer to Fingerlakes' complaint, Fillmore asserts an accord and satisfaction affirmative defense. The parties, however, misconstrue the legal effect of their October, 2001 settlement agreement. Before the un-executed October, 2001 agreement can operate as both an accord *and* satisfaction, the payments from Fillmore to Fingerlakes must be fully executed, or in the alternative, the parties must have intended the mere promises contained in their agreement to discharge the underlying contract, such that the exchange of promises served as the satisfaction. See Sargent v. Donahue, 94 Vt. 271 (1920) (citations omitted) ("It is a familiar rule that an unexecuted accord is not a bar to an action on the original undertaking . . . [i]t is equally well settled that, when a creditor accepts the mere promise of his debtor to perform some act in the future in satisfaction of the debt, the mere promise itself, without performance, is sufficient to extinguish the debt.").

Because Fillmore ceased payments under the October, 2001 agreement, the accord was never fully executed, and thus if the parties did not intend the exchange of promises in their October, 2001 agreement to satisfy the accord, the agreement could not have discharged the

4

underlying contract. Therefore, the parties' October, 2001 agreement was not an accord and satisfaction, but rather an executory accord, or a compromise and settlement that has not been fully executed.

Vermont treats un-executed settlement agreements as executory accords, such that when parties reach a compromise and settlement of a disputed claim, the original contract is merely suspended, rather than discharged. See Spaulding v. Cahill, 146 Vt. 386, 388 (1985) (citing Restatement (Second) of Contracts § 281(2) (1981)) (until the terms of a settlement agreement are satisfied, the underlying contract is "suspended" such that the non-breaching party of the settlement agreement may sue under the agreement or the underlying contract). The effect of a breach by the debtor is that the creditor may sue either on the underlying contract, or the compromise agreement. Id.; see also 15 Williston on Contracts § 1848, at 533-34 (1972) (where performance of accord is required for satisfaction, in event of breach by debtor creditor may "sue either on the original cause of action, or . . . on the contract of accord") .

Here, Fingerlakes, as creditor, sues for specific enforcement of the settlement agreement, although it refers, and to some extent relies upon, the provisions of the original contract in arguing its motion. Nevertheless, because Fingerlakes seeks satisfaction of the October, 2001 agreement, and not the amount owed under the original contract, Fingerlakes sues under the October, 2001 agreement. See, e.g., Priem v. Shires, 697 S.W.2d 860, 864 n.3 (Tex. App. 1985) (citing Alexander v. Handley, 123 S.W.2d 379 (Tex. Civ. App. 1938) aff'd, 146 S.W.2d 740 (Tex. 1941)) (noting that "[i]n contracts of settlement and compromise, if the executory obligation is breached, the non-breaching party may elect to enforce either the contract of settlement and compromise or the original disputed or unliquidated claim, but he may not claim

5

the benefit of the former and also sue on the latter"); <u>Coffeyville State Bank v. Lembeck</u>, 610 P.2d 616, 619 (Kan. 1980) (citing Restatement of Contracts § 417 (1932)) (where creditor bank entered executory accord with debtor, and debtor breached accord, bank elected its remedy and obtained judgment on accord such that bank was "estop[ped] from suing on the original note"). Here, both parties attempt to reach back into the original contract to gain the benefits of the terms therein. Because Fingerlakes has elected the remedy of suing on the October, 2001 agreement, it is limited to the terms of that agreement, as is Fillmore. This is true whether the October, 2001 agreement is deemed executory or is deemed to be a substituted contract, because Fingerlakes has elected its remedy in the present suit.

For a contract to be binding and valid, it requires a valid offer and acceptance by authorized parties, consideration, and the mutual assent by the parties to the contract: a meeting of the minds. A number of facts submitted by the parties demonstrate that the October, 2001 agreement was a valid and enforceable contract. The trial court construes a contract as a matter of law, <u>Dillon v. Champion Jogbra, Inc.</u>, 175 Vt. 1, 6 (2002), and must do so here.

The parties conducted lengthy negotiations through exchanged letters, covering numerous issues in dispute. (See Fingerlakes' Mot. for Summ. J., at Ex. A-D.) Consideration supports the agreement because both parties reached a compromise of disputed claims at issue between them. See <u>Spaulding</u>, 146 Vt. at 388 (citing <u>Howard v. Howard</u>, 122 Vt. 27, 32 (1960)) ("Compromise of a doubtful claim is sufficient consideration to support [a settlement agreement], as long as the claim is based on reasonable grounds honestly entertained."). Here, Fingerlakes accepted a fifty thousand dollar reduction in the contract price, and Fillmore agreed to pay the reduced balance on the contract with the understanding that "this agreement resolves in full the outstanding issues

6

between our firms." (Fingerlakes' Mot. for Summ. J., at Ex. C.) Therefore, the parties each gave up something in relation to what was a disputed claim between them: the performance of the original contract.

Fillmore submitted its initial payment of $25,000 under the above agreement on November 10, 2001, and made eight monthly payments before ceasing those payments. Fillmore asserts that it discovered latent problems allegedly caused by Fingerlakes, which could not be, or were not discovered prior to the October, 2001 agreement. To this end, Fillmore asserts a counterclaim grounded on the terms of the original contract between the parties. In its counterclaim, Fillmore asserts that Fingerlakes "breached its obligations to Defendants to perform the work in a good, workmanlike, and timely manner." (Def.'s Answer to Pl.'s Compl., at 3-4.) In its response to Fingerlakes' summary judgment motion, Fillmore expands on the allegations in its counterclaim, asserting Fingerlakes' breach of implied warranties as well as gross negligence in performing the construction of the dairy facility. However, because Fingerlakes elected its remedy and sues on the October, 2001 agreement, the original contract remains suspended and Fillmore, as breaching party, may not avail itself of the original contract when Fingerlakes has elected not to sue on it. Priem, 697 S.W.2d at 864 n.3; Coffeyville State Bank, 610 P.2d at 619.

Vermont, like many jurisdictions, seeks to encourage extra-judicial settlement of disputes. See, e.g., Dutch Hill Inn, Inc. v. Patten, 131 Vt. 187, 192 (1973) ("[p]ublic policy . . . strongly favors settlement of disputed claims without litigation"). To this end, the Court will not allow a party to a valid settlement agreement, supported by adequate consideration, to simply decide it is not satisfied with a binding agreement, entered into voluntarily, and return to the

7

original contract as if the settlement were never entered into. For the law to allow a party to enter into, breach, and then disregard as nugatory a valid contract is squarely against the policy of encouraging settlement among parties. Allowing a party to do so provides no incentive for parties to bind themselves, and thus rely upon, a good faith compromise of a disputed claim. Fillmore, at this stage, must abide by its agreement with Fingerlakes. Because there are no material facts in dispute as to the validity or enforceability of the October, 2001 agreement, nor the material facts relating to the amounts owed under this agreement, summary judgment is appropriate, and the Court will order the enforcement of the October, 2001 agreement between the parties.

The undisputed material facts support summary judgment against Fillmore and Edward Holden, as both were parties to the October, 2001 agreement. However, Plaintiff also seeks summary judgment against Defendant EH Holden Corporation, as party to the original contract. This issue does not appear to have been significant to the parties in their briefing and Plaintiff has offered no legal basis from which the Court is authorized to grant judgment against EH Holden, who was not a clear party to the October, 2001 order upon which Plaintiff brings suit. Although Plaintiff's affidavit, accompanying this motion, names all Defendants as "part of a dairy family," Defendant Fillmore and Holden's statement of undisputed facts contests the fact that EH Holden was a party to the October, 2001 agreement. Thus, the Court will not grant summary judgment at this time as to EH Holden Corporation. Plaintiff may further supplement his motion with factual or legal authority on this issue.

### CONCLUSION AND ORDER

Because the October, 2001 agreement between the parties is a valid and enforceable

8

contract, and because there are no material facts in dispute as to the agreement's validity, whether it was breached and the amounts outstanding, summary judgment is appropriate.

For the foregoing reasons, Fingerlakes' Motion for Summary Judgment is **GRANTED** on Plaintiff's claims and Defendants' counterclaim, as to Defendants Fillmore Farms, LLC and Edward Holden and **DENIED** as to EH Holden Corporation.


Dated this _____ day of August 2005, at Bennington, County of Bennington, Vermont.


_____
Karen R. Carroll
Presiding Judge